SILAS IRELAND ET AL. v. HIRAM K. MILLER ET AL.

*Executors and administrators—Will—Sale of real estate to pay debts and legacies—Order of sale—Equity jurisdiction.*

1. Under How. Stat. § 6037, lands remaining in the hands of heirs or devisees must be sold to pay debts or legacies before resorting to those sold by them to third parties, and equity has jurisdiction to restrain the sale by executors of such lands in any other order.

2. Under the facts stated in the opinion, the jurisdiction of equity having attached to enjoin the attempted sale, the court may take sufficient cognizance of the whole matter to declare for what specific purpose a sale may be ordered.

Appeal from Cass. (Smith, J.) Argued January 27, 1888. Decided July 11, 1888.

Bill to enjoin an executor's sale. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Spafford Tryon* and *O. W. Coolidge,* for complainants.

*F. J. Atwell (Austin Blair,* of counsel), for defendants.

MORSE, J. Jacob Miller died on or about August 31, 1872, leaving a widow, Mary E. Miller, and five children, to wit, Mary J., Christopher, Abijah B., James S., and

Francis O. He made a will, May 15, 1872, which was duly probated. The defendants Hiram K. Miller, a brother of testator, and James S. Miller, his son, are his executors under said will. By this will he gave to his wife certain personal property absolutely, and the use of 80 acres of land during her life or until she married again. In case of her remarriage, the land reverted to the estate, and the executors were to pay her $1,000 in *lieu* thereof. He gave his son Christopher $1,000, to be paid in one year from his death. He bequeathed to his daughter, Mary Jane, $2,000, and directed that his executors should loan the same on bonds and mortgages, in trust for her, on real estate in Michigan or New York, until she became 21 years of age, at which time they were to pay her the said $2,000, with all interest that may have accrued from such sum, except such sums as they may have paid out as they deemed necessary for her education and support. He also gave her a piano, two beds, and bedding. One-third of all the residue of his estate he devised to his son Abijah B. Miller, and directed his executors to keep and hold the same in trust, loaned out on bond and mortgage, the interest to be used for his support, or such portion of it as, in the judgment of the executors, might be sufficient for that purpose; the balance of the interest, if any, to be paid to his sons James S. and Francis O. Miller. The balance of his estate was willed to James S. and Francis O. Miller in equal shares. Upon the death of Abijah B. Miller the will directed that the portion of the estate devised to him should be divided equally between James S. and Francis O. Miller.

The inventory of the personal property of the deceased, as appraised, amounted to $9,589.21. One of the items of this inventory was a note secured by mortgage on property known as the "Eureka Mills." This note was appraised at $6,600. The mortgage was being foreclosed

at the time of his death, and had progressed to a sale of the premises described therein ; the land being bid in, upon such sale, by the deceased in his life-time at the sum of $6,622. The time for redemption had not expired at the date of his death. Another note secured by mortgage was inventoried and appraised at $1,100. This mortgage was also in process of foreclosure at the time of Jacob Miller's death. The land covered by the mortgage had also been bid in by Miller on foreclosure sale, before his death, for $322.02. This land was never redeemed. The balance of the personal estate, as inventoried, amounted to $1,889.21. He left a farm of 213 acres, in Cass county, Mich., appraised at $10,000, and a house and lots in Dowagiac, appraised at $1,000.

May 12, 1873, James S. Miller, one of the heirs, and also one of the executors of the will of Jacob Miller, together with Francis O. Miller and Abijah B. Miller, their wives joining, executed a warranty deed of the Eureka Mills property to Thomas H. Jones and Edward Badger. Jones and Badger went into possession of the premises the same year. The complainant Silas Ireland came into the possession of the same premises in 1878, under purchase at a foreclosure sale of the property by virtue of a mortgage executed upon the land by Jones and Badger. He has been in possession ever since.

April 7, 1876, Francis O. Miller and Abijah B. Miller executed a warranty deed of the house and lots in Dowagiac to one Conkright. Conkright conveyed the same premises in 1878 to the complainant Elizabeth Defendorf. Possession of the lots has been continuous in Conkright and Mrs. Defendorf since 1876.

The complainants filed their bill in the circuit court for the county of Cass, in chancery, in July, 1886, alleging the ownership and possession of the Eureka Mills property in Silas Ireland, as heretofore stated, the ownership and

possession of the house and lots in Dowagiac in Mrs. Defendorf, as hereinbefore set forth, and that Annie Miller, the other complainant, had been the owner and occupant of certain other lands belonging to Jacob Miller at the date of his death, since April 20, 1881. It is averred that the said Annie Miller acquired her title to the premises occupied by her as follows: Francis O. Miller, April 15, 1878, obtained a loan from Spafford Tryon of $250, and, to secure the payment of the same, executed a mortgage to him upon said premises. This mortgage was afterwards duly foreclosed, and the said Annie Miller purchased the same at the foreclosure sale for $390.79, and received a deed, under which she went into possession of the land.

It is further averred in the bill that the executors of the will of Jacob Miller, to wit, Hiram K. Miller and James S. Miller, entered upon the duties of their trust, and possessed themselves of the personal estate of the deceased, which was more than sufficient to pay the debts and legacies and testamentary expenses; that such executors refused to come to an accounting as to their disposition of said personal estate, although often requested so to do; that they have never rendered any account of their administration to the probate court of Cass county, nor has the time for rendering such account ever been extended by said probate court.

The complainant Ireland alleges that the Eureka Mills property was conveyed to Jones and Badger in exchange for property in New York or New Jersey, which property, or the proceeds thereof, was appropriated by the said executors, and has never been accounted for by them; that he bought the property without any knowledge of the will of said Jacob Miller, or the terms and conditions of the same; that he has expended, since his purchase, over $4,000 in repairs and improvements upon said mill property.

The bill avers, further, that said executors, at the time

letters testamentary were granted them, did not live in Michigan, Hiram K. Miller then and now residing in the city of New York, and James S. Miller at Orange, in the State of New Jersey; that no commissioners were ever appointed to examine and allow claims, but the claims against the estate were heard and adjusted by the probate court in March and October, 1873; that all the debts against said estate have been paid. No proceedings of any kind were, after October, 1873, taken in said estate until in the spring of 1885, when the said executors obtained a license from said probate court to sell the lands occupied and claimed by Ireland. No action was taken, however, under said license. On March 20, 1886, said executors filed another petition in said court, praying for a license to sell the lands held by the complainants to pay the legacies mentioned in the will of said Jacob Miller, upon which petition the judge of probate granted an order of hearing, and, upon such hearing, April 20, 1886, granted the prayer of said petition, and licensed said executors to sell said lands, with other real estate. Acting under such license, the executors gave notice of sale.

The complainants further show the amount of personal property left by Jacob Miller as appraised, to be $9,589.21, and aver that all the just debts did not exceed the sum of $2,500, and that the executors, from the sale and disposition of said personal property, secured more than sufficient money to pay such debts and the legacies to be paid under the will.

Complainants further aver that such order of sale is without lawful right or authority; that the petition (a copy of which is attached to the bill), is defective, and not in compliance with the statute, and gave the court no jurisdiction to grant a license; and that the payment of the legacies, by the terms of the will, are made dependent upon certain contingencies and survivorships, and that

such payment by said executors is no part of their executorial duties, but pertains to their duties as trustees under said will, and that, therefore, said executors, under their petition, have no legal standing in said probate court, and no authority to proceed therein; that there is still remaining unsold real estate belonging to the estate of said Jacob Miller more than sufficient to pay all legacies. And the complainants pray a restraint of said executors' sale, and a confirmation of their title to the lands held and occupied by them, respectively.

The defendants answered, in substance, admitting the conveyances of the parcels of land claimed by complainants by Francis O. Miller, James S. Miller, and Abijah B. Miller, and their wives, but aver that such conveyances were made by said heirs for the benefit of themselves individually, and deny that any of the said lands were sold or disposed of for the benefit of the estate of Jacob Miller, or that any of said conveyances change or legally incumber said estate, or in justice or equity should hinder or delay said defendants in their duties as executors of the same. They admit that the personal estate inventoried $9,589.21, but aver that the notes and mortgages foreclosed, as heretofore stated, amounted to $7,700, which were converted by such foreclosures into real estate, thus reducing the personal property to $1,889.21, which has been exhausted in paying debts; and that a large amount of debts yet remain unpaid. They deny that there was sufficient personal estate to pay the debts and legacies, and deny all other averments of the bill, except that they have petitioned for and been granted a license to sell the real estate of said deceased.

Upon pleadings and proofs the court below decreed that there was due to Mary Jane Miller, as legatee, the sum of $2,000, and that the executors should be empowered and authorized to sell a portion of the lands of said

Jacob Miller, deceased, to pay the same; that the probate court had no right, under the petition, to authorize the sale of said lands for any other purpose than the payment of this legacy; and ordered that the said lands be sold by the executors for this purpose in a certain manner, dividing said lands into eight parcels, to be sold separately, the lands owned or claimed by Mrs. Defendorf to be sold seventh, and the premises claimed and occupied by Ireland lastly, of the series. The defendants appeal.

For the purposes of determining this appeal, we do not consider it necessary to decide or discuss many of the points raised upon the argument touching the validity of the probate proceedings. The complainants have not appealed, and must be considered as standing before us satisfied with the decree of the court below. That decree does not interfere with the jurisdiction of the probate court over the estate of the deceased, or deny the right of the probate judge to order a sale of the lands of the decedent to pay the legacy due to Mary Jane Miller; but, on the contrary, affirms such right. But it changes the order of sale, and directs that the lands claimed by complainants shall not be sold until after the sale of the lands devised and descended which have not been conveyed by the heirs or devisees.

The proofs show that the executors, under the license or order of the probate court, were proceeding to sell, and had advertised the lands for sale, in such order that the lands of Ireland and Mrs. Defendorf would be sold first. This was a clear violation of the statute, which provides that,—

"If any lands devised or descended have been sold by the heirs or devisees, then the lands in their hands remaining unsold shall be ordered to be first sold." How. Stat. § 6037.

. It is undisputed that Mrs. Defendorf and Ireland hold the titles as stated in the bill of complaint. The executors were proceeding to sell the lands claimed by them, in direct violation of law, and without authority, in so far, at least, as they were attempting to sell these lands before the other lands belonging to the decedent were sold, as directed by the statute. The complainants were not obliged to appeal from the order of the probate court. When the executors commenced proceedings to execute the license granted them in the manner they did, they were acting without authority of law, to the injury of complainants, who had the right to appeal to a court of equity for relief. In moving so far, the court of chancery does not interfere with the settlement of the estate by the probate court. It does not enter into any accounting between the executors and the estate, or assume jurisdiction thereof. Nor does it meddle with the right of the probate court to order the sale of the real estate of the deceased to pay debts and legacies. But when the executors undertake to divest the complainants of their rights in the lands which they have purchased of the heirs and devisees, it reaches out its restraining hand, and prevents such executors from proceeding to do so, in positive violation of law, and decrees that the lands in which complainants are interested shall not be touched until the other lands are sold. There can be no question of the right of a court of equity to do this.

But the court has gone further. Not content with directing that the lands shall be sold in the order prescribed by the statute in such cases, the decree goes further, and declares that the—

"Probate court had no right or authority to order a sale for the payment of anything else than the payment of the said legacy mentioned in said will as going to said

Mary Jane Miller, and that the order of sale provided for, by the probate court, and set forth in the notice of sale of the lands so licensed to be sold by the probate court, was erroneous and unjust."

It is contended by the defendants that the petition to the probate court, and the account of the executors in that court, show that said executors have expended, over and above the moneys received by them, the sum of $1,282.76, and that the probate court has the right, with which right a court of chancery cannot interfere, to order a sale of the lands of decedent to pay this balance and other expenses of the settlement of the estate. The complainants, however, claim that the record shows no debts existing against the estate, and that there was no showing by the executors that there was not an ample sufficiency of personal property in their hands with which to pay the debts and legacies; and that no accounting was made by the executors until 1884, some 12 years after their appointment, and that on such accounting no vouchers were produced, nor was the account ever allowed and approved by the court. To this the defendants reply that chancery has no jurisdiction over the accounting of the executors, and that the settlement of the same is the exclusive province of the probate court, under the decisions of this Court.

An examination of the record shows that the defendants introduced no testimony in the court below; and there is really but little light thrown upon the true condition of the estate, or the doings of the executors, in the whole proofs. But there is enough to show that, if the estate had been properly administered, there would have been no necessity for resorting to a sale of any of the real estate to pay this legacy, or the debts of the deceased; and it does not appear clear to us that the executors, at this late hour, have any right to sell the

lands claimed and occupied by the complainants Ireland and Defendorf.

We are satisfied of the jurisdiction of equity to enjoin this attempted sale by the executors under the order of the probate court; and, having jurisdiction to that end, the court of chancery may take sufficient cognizance of the whole matter to justify the decree in the court below. This decree will be affirmed, as, the complainants not having appealed, we can go no further. The costs of both courts will be granted to complainants.

We do not consider it necessary to discuss or decide the other points mooted upon the argument, as, in the condition the cause is brought here, we cannot determine the sufficiency of the title of complainants, as claimed by them, against the heirs, executors, or others claiming interest in the lands under Jacob Miller. This decree will therefore operate as without prejudice against any other proceeding to settle their title to the lands claimed by them.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred.