91 315
109 21

EUGENE M. BUSH v. RICHARD FREER AND ESTHER
FREER.

*Mortgage—Bill to discharge—Parties.*

Complainant's father conveyed to him by warranty deed 10 acres
of land out of a tract of about 60 acres, all of which was
incumbered by a certain mortgage, and afterwards conveyed
to the defendant Esther Freer, with other lands, the remaining
50 acres, by warranty deed, subject to the above-mentioned
mortgage and to two others, which she assumed and agreed to
pay, and complainant's father agreed to discharge a fourth
mortgage. The latter sale was negotiated by the grantee's
husband, Richard Freer, who directed that the deed be executed
to his wife without her knowledge. Two of the three mort-
gages were paid, and the one affecting complainant's parcel
was assigned to Richard Freer, but the assignment was not
recorded. The fourth mortgage remained undischarged.
Complainant filed a bill under How. Stat. § 5704, to compel
the release of his 10 acres from the mortgage, and to recover
the statutory penalty of $100. Defendants insist that complain-
ant was a stranger to the transactions between his father and
them, except that during the negotiations he promised defend-
ant Richard Freer that, if he would release the 10 acres from
the mortgage, complainant would build certain line fences, and
that Freer agreed to do so if complainant's father would dis-
charge the fourth mortgage and complainant would build the
fence, which agreements defendants claim have not been kept;
and they further claim that Richard Freer is willing to release
the 10 acres if complainant and his father will perform their
agreements. The amount involved in the fence controversy is
about $40. And in decreeing the release of the 10 acres by
Richard Freer, the Court hold:

*a*—Complainant's rights do not depend entirely upon the
agreement on the part of Esther Freer to discharge the mort-
gage. By operation of law she took the 50 acres charged with
the payment of the mortgage on the 10 acres, and the breach
of the covenants of warranty in her deed did not relieve the
land from such charge, or affect complainant's right to insist
that the land should be sold upon the foreclosure of the mort-
gage in the inverse order of alienation.

*b*—Richard Freer must be regarded as the real party in

interest, so far as the land conveyed to his wife is concerned.

c—The only reasons he urges for his refusal to release the 10 acres relate to the land itself, and not to his separate interest as owner of the mortgage, the assignment of which was taken for the sole purpose of harassing the complainant, and to compel him to do what he was neither legally nor equitably bound to do; the Court finding that, if any agreement was made to build a line fence, it was made by complainant's father.

d—The mortgage is a cloud upon the title of complainant to his land, and the bill may be treated as one to remove such cloud.

Appeal from Barry. (Hooker, J.) Argued March 9, 1892. Decided April 8, 1892.

Bill to compel the release of a portion of mortgaged premises, and to recover the statutory penalty of $100. Complainant appeals. Decree reversed, and one entered directing a discharge of the mortgage by Richard Freer as to complainant's land. The facts are stated in the opinion.

*Smith & Colgrove*, for complainant.

*Chas. G. Holbrook* and *Alonzo D. Cadwallader*, for defendants, contended:

1. Oral conversations and verbal agreements merge in a written contract; citing *Adair v. Adair*, 5 Mich. 209; *Savercool v. Farwell*, 17 Id. 308; *Martin v. Hamlin*, 18 Id. 364; *Vanderkarr v. Thompson*, 19 Id. 86; *Cline v. Hubbard*, 31 Id. 239; *Fraser v. Fraser*, 42 Id. 281.

2. An agreement to release a parcel of land from a mortgage is an agreement for a resale, and within the statute of frauds; citing *McEwan v. Ortman*, 34 Mich. 327.

3. Richard Freer, not being mentioned in the deed to his wife, and not being bound by any verbal or written contract, is not bound to release complainant's land; citing *McMillan v. Railroad Co.*, 16 Mich. 114; *Newton v. Sly*, 15 Id. 396.

McGRATH, J. On January 17, 1889, Timothy M. Bush conveyed to complainant by warranty deed 10 acres of

land. At the time of the conveyance Thomas J. Pennock held a mortgage, dated May 24, 1888, covering the 10 acres and other land. On February 21, 1889, Timothy M. Bush conveyed the other land covered by this mortgage, with still other lands, to Esther Freer, one of the defendants. This last named conveyance was a warranty deed, subject to three mortgages, including the mortgage to Pennock aforesaid, which aggregated the sum of $3,000 which mortgages defendant Esther Freer assumed and agreed to pay as part of the purchase money, which was $5,500. The negotiations for the sale and conveyance from Bush to Esther Freer were negotiated by defendant Richard Freer, and the consideration so far as paid was paid by said Richard Freer. The conveyance to Esther Freer was made by direction of Richard Freer, and without the knowledge of said Esther Freer. Two of the three mortgages referred to in said deed from Bush to Freer have been paid and discharged. The Pennock mortgage, which covers complainant's land, has been assigned to Richard Freer, but the assignment has not been recorded, and Richard Freer refuses to discharge the mortgage. This bill is filed to compel such discharge, alleging that the mortgage has in fact been paid, but that it was assigned to Richard Freer with intent to harass complainant, and that the failure to discharge it prevents complainant from selling or mortgaging his land. It appears that at the time of the conveyance from Bush to Esther Freer, a fourth mortgage to one Holloway existed upon the land conveyed to Esther Freer, which mortgage Timothy M. Bush agreed to satisfy and discharge, and that said mortgage has not been discharged.

Defendants further insist that complainant was a stranger to the transactions between defendants and Timothy M. Bush, except that, while the negotiations

were going on with Timothy M. Bush, complainant promised defendant Richard Freer that, if the latter would release the said 10 acres from the Pennock mortgage, he, complainant, would remove and rebuild and place on the line certain fences, and thereupon "this defendant Richard Freer promised so to do if Timothy M. Bush would do as he agreed," and both the said Eugene M. Bush and Timothy M. Bush have failed to do what each agreed, to do; that defendant Richard Freer purchased the said Pennock mortgage, and holds and owns the same, but that he is willing to discharge the same if complainant will perform his agreement respecting the fences, and pay and discharge the said Holloway mortgage.

Complainant's rights do not depend entirely upon the agreement on Esther Freer's part to discharge the mortgage. By operation of law, Esther Freer took the property conveyed to her charged with the payment of the mortgage upon complainant's land. The breach of the covenant of warranty, which the deed from Bush to her contained, did not relieve the land from the charge created by operation of law, or affect complainant's right to insist that the land should be sold upon foreclosure of the mortgage in the inverse order of alienation. The record discloses no agreement on the part of complainant respecting the discharge of the Holloway mortgage, nor does it disclose an agreement on complainant's part that he should build the line fence spoken of. Complainant had his deed at the time the negotiations were had between defendant Richard Freer and Timothy M. Bush. There was some talk concerning the line fence, but the final agreement relative thereto, if any existed, was made with Timothy M. Bush, and not with complainant. According to defendants' testimony, the entire

amount involved in this fence controversy was not to exceed $40. It appears, too, that defendant Richard Freer moved this fence. He says:

"I moved the fence. It was in the spring, just after oats came up. I went and got the rails, as Eugene had told me, as near as I could. I didn't pay anything for rails or any damage for not moving them. He had told me if I would pay him $5 I could have them, but finally he agreed that if I would take them away he wouldn't charge me any damage."

The record shows that after the conveyance was made Richard Freer had several law-suits with Timothy M. Bush, one of which was respecting this very fence. The fence suit was settled between the parties by payment of a sum of money by Timothy M. Bush. These suits were brought by Richard Freer and were settled by him. In all matters Richard Freer appears as the party in interest. He paid the consideration for the land, and paid off the two mortgages. He said that he took the deed in his wife's name because he "understood that Timothy M. Bush and Eugene Bush were trying a snap game on him." When asked why he had the Pennock mortgage assigned to him, instead of having it discharged, he says:

"Mr. Timothy Bush agreed to have the Holloway mortgage free the part of the farm I bought. Also Eugene wouldn't do as he agreed about the fence. Eugene said, if I would discharge the Pennock mortgage from his place, he would move the fence onto the line. I really didn't accept this proposition, but afterwards [after the deed was given] went to his house, and said to Eugene if he would move the fence on the line it would be all right. He refused to do so. I told him if he wouldn't move the fence, I would never discharge that mortgage off his land. I hadn't got the mortgage at that time."

One of the complainant's witnesses testified to a conversation with Richard Freer, in which the latter said that complainant—

"Had notified Esther Freer to remove the fence; that he would show that young man that he wouldn't pay the mortgage and discharge it."

Another witness says, respecting the sale by Richard Freer to Thomas Pennock:

"I think Freer was to take a mortgage given to Thos. Pennock by Timothy M. Bush. Mr. Freer told Pennock he wanted the Thos. Pennock mortgage signed over to him, and said he would let the little man sweat over it."

Richard Freer must be regarded as a party, if not the real party, in interest, so far as the land conveyed to his wife is concerned. The reasons, and the only reasons, which he urges for his refusal to discharge the mortgage relate to the land itself, and not to his separate interest as the owner of the mortgage. It is clear that the assignment of this mortgage was taken for the sole purpose of harassing the complainant, and to compel him to do what he was not legally or equitably bound to do. The mortgage resting upon complainant's land is a cloud upon his title, and the bill may be treated here as one to remove such cloud.[1]

The decree of the court below is therefore reversed, and a decree will be entered here against defendant Richard Freer, directing a discharge of said mortgage, so far as it affects the land of complainant, together with the costs of both courts.

The other Justices concurred.

---

[1] The bill was filed under How. Stat. § 5704, to obtain a discharge of the mortgage, and to collect the statutory penalty of $100.