### SMITH *v.* WAALKES.

1 INJUNCTION—BILL FOR DIVORCE.

Complainant filed a bill against her husband and defendant, alleging grounds for divorce, and also a conspiracy between her husband and defendant, whereby her husband's property had been fraudulently transferred to the latter, and praying that, if it should appear to the court that complainant had not resided within the State a sufficient length of time to authorize her to maintain a bill for divorce, an injunction might issue restraining defendant from disposing of or incumbering his property until such time as she could legally maintain such bill. *Held*, that the bill was properly sustained as an injunction bill, although it failed as a bill for divorce.

2. SAME—DEATH OF PARTY—ABATEMENT OF SUIT.

The death of the husband after the violation of the injunction by the defendant did not abate the suit, so as to relieve the defendant from liability to punishment for contempt.

3. SAME—CONTEMPT OF COURT—PROCEEDINGS TO PUNISH.

Where the petition for an order to show cause why the defendant in an injunction bill should not be punished for contempt sets out at length the facts in the case, and the defendant, in his answer, does not deny the correctness of the material facts as stated, but interposes a defense the sufficiency of which is purely a question of law, the court may dispose of the proceeding without the framing of interrogatories or making an order of reference, especially where the defendant makes no request therefor.

Appeal from Kent; Grove, J. Submitted January 14, 1896. Decided March 31, 1896.

Bill by Jane Smith against Martin Waalkes, impleaded with Baltus Smith, for an injunction. Defendant appeals from an order adjudging him guilty of contempt, and awarding damages to complainant. Affirmed.

*Earle & Hyde,* for complainant.

C. O. *Smedley* (*B. M. Corwin,* of counsel), for defendant.

MOORE, J.   The complainant filed a bill in chancery against her husband, Baltus Smith, and this defendant. The bill shows that she and Baltus Smith were married in Kent county in 1873, and that they had been out of the State, in Kansas, Texas, Colorado, and California, and that neither had resided in the State but a short time immediately preceding the filing of the bill of complaint; that they had lived together as husband and wife until August, 1894; that complainant had borne her husband seven children, three of whom were then living, their ages ranging from 16 to 8 years; that, in the spring of 1894, Smith and his family were living in California; that at that time Smith owned a real-estate mortgage for $1,600 upon the property of defendant, Waalkes, located in Grand Rapids; that that spring Waalkes came to the Smiths, in California, and tried to get Smith and his wife to discharge the mortgage, and let him make a first mortgage upon the property, and give them a second mortgage; that they declined to do that, and Waalkes became incensed at Mrs. Smith, and in a large measure obtained control of Smith, and began to insinuate to him that his wife was guilty of improper conduct with other men, and that Smith finally came to believe Waalkes' statements to be true; that, while Waalkes was there in California, he took up a coal-mining claim, and about the 1st of August, 1894, induced Smith to turn over to him the real-estate mortgage and other property, consisting of notes (all that he had) amounting to about $3,000, in pretended consideration of the transfer to him by Waalkes of the mining claim; that the mining claim was entirely worthless, and that the real purpose of the transfer was to get the property of Smith out of the reach of complainant and the children, and then to

get Smith to desert his family; that about August 1, 1894, Smith and Waalkes left California, Smith pretending that he had a position in Kansas, where he was going; that complainant thereupon gave him two dollars to buy food on the journey, and bade him good bye; that, instead of stopping in Kansas, they came direct to Grand Rapids, and had, up to the time of filing the bill, remained there; that, immediately upon their arrival, they stated to complainant's father, mother, brother, and sisters, and to a large number of her friends, that complainant would not return to Grand Rapids, but had run away with another man, and had been guilty of abusing Smith, and had deserted him while he was sick, and that the children had conspired with complainant to abuse and ill-treat Smith, and that she was as bad as any prostitute on Waterloo street, and had stated that she would not return with her husband, but would remain with her paramour, and was waiting for her parents to die, to get some of their money.

The bill further alleges that when complainant was deserted by her husband she had no means, and could not return to Grand Rapids, and that Smith and Waalkes succeeded in making her relatives here believe the statements about her character, but that about the 20th of January her friends in Grand Rapids sent her money, and she came back February 2, 1895; that Smith and Waalkes conspired together to defeat her in recovering alimony, and to defeat any claim that she might have for herself and children in the property and money so transferred by Smith to Waalkes; that, after the return of Smith and Waalkes to Grand Rapids, Smith also turned over to Waalkes the household furniture belonging to complainant, and that she is entirely without means, and living upon the charity of her friends; that, every statement derogatory to the character of complainant made by Smith and Waalkes is absolutely false, and entirely without foundation; that the statements were made to defraud

complainant, and defeat her claim for alimony. The bill further shows that Waalkes has real estate in the city of Grand Rapids, and a specific description thereof is set out; that Smith, after his return to Grand Rapids, discharged the $1,600 mortgage on Waalkes' property; and that, unless Waalkes is restrained, he will dispose of his property, in order to hinder and defeat complainant.

The bill prayed that Waalkes be enjoined from disposing of or incumbering his property, and from disposing of the notes turned over to him by Smith; and also prayed for a divorce between the parties, and for alimony; and that the decree for alimony be a lien upon the real estate of Waalkes, and that he be decreed to pay alimony so to be awarded; and there was also a prayer for general relief. After this prayer came the following:

"14. Or, if it shall appear that, on account of the absence of your oratrix from the State of Michigan, she is not entitled to file a bill for divorce at this time, in this court, that the said Martin Waalkes may be enjoined and restrained, as prayed for above, until your oratrix may legally file a bill for a divorce against the said defendant, Baltus Smith, and obtain a decree therein for divorce and alimony as prayed for herein."

Judge Grove ordered an injunction, and the same was properly served, and at the time the bill was filed a *lis pendens* was recorded in the office of the register of deeds. The injunction was served February 16, 1895. March 23, 1895, Waalkes executed a mortgage upon a portion of the property for $3,000, and the mortgage was recorded. Thereafter, and before the death of Baltus Smith, complainant filed a petition asking leave to amend the bill of complaint by making the children parties complainant, and also a further prayer for relief. On the 13th of April, 1895, Baltus Smith died. Two days later, defendant, Waalkes, demurred to the bill of complaint, *after the death of Baltus Smith, and also after the petition to amend the bill had been filed, and while it was pend-*

*ing.* August 3, 1895, the suit was revived by naming complainant, who had been appointed administratrix of the estate of Baltus Smith, deceased, and the order provided that she should be classed as a complainant. Defendant, Waalkes, was required to show cause, August 19, 1895, why he should not be punished for contempt in violating the injunction by executing the mortgage of March 23, 1895.

Waalkes filed his answer, setting forth that he was not guilty of violating the injunction issued in said cause; that Jane Smith filed said bill for the purpose of obtaining a decree of divorce from her husband, Baltus Smith, and for the purpose of obtaining alimony; that when Baltus Smith died the suit abated, and was entirely at an end, because the relief sought against Martin Waalkes was only ancillary to the suit for divorce; that the suit for slander commenced by *capias* by said Jane Smith against said Martin Waalkes was commenced simultaneously with the issuing of said injunction, and was done for the purpose of preventing said Martin Waalkes from obtaining bail, because said injunction would hinder him in giving security to his bondsmen; that what incumbrance he did place on his homestead was given for the benefit of said Jane Smith, because it was only a conditional mortgage, which provided for a payment to her if she was successful in her slander suit; that it was impossible for him to obtain bail without giving the mortgage, and that he would have had to go to jail if he had not put in said bail bond; that he had been imprisoned one day and one night, to wit, the 15th of February, 1895; that he appeared in said cause, and filed a demurrer to the bill of complaint, and that the said demurrer had not yet been heard or disposed of.

Judge Grove fined the defendant $200 for his contempt, and ordered him to pay the sum to the complainant for her damages in the matter. No interrogatories were filed, and Judge Grove held that, inasmuch as a *lis pendens* was on record, the mortgagees obtained no valid lien

upon the real estate as against complainant, and that her damage by reason of the injury done her by the giving of the said mortgage was $200.

Defendant appeals from the order convicting him of contempt in violating the injunction, and claims that the court had no jurisdiction, because the proceeding was one for divorce, that the complainant was not a resident of the State, and that the court had no right to issue the injunction, and for that reason to ignore it would not be a contempt of court.

It is not necessary to discuss whether, because of not residing in the State a sufficient length of time, the complainant could sustain the bill as a proceeding for divorce or not. She sufficiently alleged a conspiracy between her husband and the defendant to deprive her of property rights to authorize the court to issue a writ of injunction to prevent any further disposition of the property until she had lived in the State a sufficient length of time to authorize her to maintain a suit for divorce, and to have her interest in the property of her husband determined by the court. There is a sufficient statement of facts entitling her to relief, to sustain the bill as an injunction bill, upon the filing of which the court was authorized to issue a writ of injunction, which must be respected by the parties litigant. The following cases are suggestive of the principle followed by the trial court: *Whipple* v. *Farrar*, 3 Mich. 436; *Jones* v. *Smith*, 22 Mich. 360; *Flanders* v. *Chamberlain*, 24 Mich. 305; *Miller* v. *Stepper*, 32 Mich. 194; *Dayton* v. *Dayton*, 68 Mich. 437; *Ireland* v. *Miller*, 71 Mich. 119; *Bush* v. *Freer*, 91 Mich. 315.

It is also claimed that the death of Baltus Smith ended the suit wholly, so that the court was not warranted in entertaining the contempt proceedings. The bill authorized the court to allow the writ of injunction, which was issued and served. The defendant neither answered nor demurred to the bill nor moved to dissolve the injunction. He simply ignored the process of the court. If he

is guilty of contempt at all, it is for acts done long before the death of Baltus Smith.   If we are right in construing this bill as one containing sufficient allegations to warrant the issuing of the writ of injunction, the death of Baltus Smith would not abate the suit as to defendant, Waalkes. *Seibly* v. *Ingham Circuit Judge*, 105 Mich. 584.

The only remaining question to discuss is, was it necessary, before the court could dispose of the contempt proceedings, to frame interrogatories and take proofs?   In answer to the petition that he be punished for contempt, Waalkes filed a sworn answer, in which he "states the facts and circumstances in said cause to be as follows." He then recites the facts, which do not differ materially from what was recited in the petition, but seeks to justify his action in the way hereinbefore stated.   No request was made by defendant to have interrogatories framed, or for an order of reference.   The case was heard and disposed of upon the pleadings and proceedings hereinbefore stated.   There was no dispute about what occurred. The pleadings, including the sworn statement of defendant, Waalkes, show just what was done.   They showed the issuing of the writ of injunction, its personal service upon Waalkes, its violation, the manner in which it was violated, the extent of its violation, and its effect upon the property rights of the complainant.   The defense in the contempt proceeding did not grow out of disputed facts, but was purely a question of law, in relation to which the defendant was mistaken.   Judge Grove had all the facts before him which could have been brought· out by a reference to a commissioner.   He was as well qualified to dispose of the proceedings without the framing of interrogatories as he would have been with them.

The case is affirmed, with costs.

The other Justices concurred.