GODSOL v. UNEMPLOYMENT COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—CERTIORARI—CIRCUIT COURT—
SUPREME COURT.
Where decision of appeal board of unemployment compensation
commission has been reviewed by circuit court on certiorari,
review by Supreme Court is limited to the judgment of the
circuit court, there being no procedure for direct review of
the decision of the administrative tribunal (Act No. 1, § 38,
Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub.
Acts 1939).

2. SAME—EMPLOYING UNITS—CONTROL—HUSBAND AND WIFE.
Employing units, one, a distributorship of certain products
owned and operated by husband but at whose place of busi-
ness wife received a salary and worked the regular hours of
an employee, and others, owned entirely by wife who held a
subdistributorship and operated by herself and husband who
frequently visited her stores, issued instructions to employees
and managers, conducted personnel matters and was more ac-
tive in the management than she, constituted such husband
and wife an ''employer'' within the terms of the unemploy-
ment compensation act where the total number of employees
was more than 8 for more than 20 weeks in a year (Act No. 1,
§ 41 [3], Pub. Acts 1936 [Ex. Sess.], as amended by Act
No. 324, Pub. Acts 1939).

3. SAME—CONTROL—EMPLOYING UNITS.
Control required under the unemployment compensation act to
constitute various employing units a single employer may
be not only that which is legally enforceable but may be
otherwise as long as it is actual control (Act No. 1, § 41 [3],
Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub.
Acts 1939).

4. CONSTITUTIONAL LAW—STATUTES—EQUAL PROTECTION.
The principle of equal protection of the law is not violated by
legislation which applies only to those persons falling within
a specified class if it applies alike to all persons within such
class and reasonable grounds exist for making a distinction
between those who fall within such class and those who do not
(U. S. Const. Am. 14).

5. UNEMPLOYMENT COMPENSATION—EMPLOYING UNITS—ACTUAL CONTROL—CONSTITUTIONAL LAW.

Provision of unemployment compensation act that two or more employing units which were actually controlled by the same interests or where one unit actually controlled another employing unit should constitute but one employer, as that term was used in the act, was not arbitrary or unreasonable as such provision was necessary in order that the benefits of the act be not denied and its purposes frustrated as to many employees by reason of disintegrated ownership and control (U. S. Const. Am. 14; Act No. 1, § 41 [3], Pub. Acts 1936 [Ex Sess.], as amended by Act No. 347, Pub. Acts 1937).

6. CONSTITUTIONAL LAW—TAXATION—DISCRETION OF LEGISLATURE.

The latitude of discretion accorded the legislature is noticeably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy.

7. SAME—TAXATION—RIGHT TO EMPLOY—EQUAL PROTECTION.

The payment of a tax by an employer on the exercise of the right to employ based upon a numerical classification is not unconstitutional as denying equal protection of the laws to employers (U. S. Const. Am. 14; Act No. 1, § 41 [3], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

8. STATUTES—TAXATION—AMENDMENT—VALIDITY.

The fact that an amendment of a taxing statute is calculated to close an avenue of tax avoidance of itself lends support to its validity.

9. UNEMPLOYMENT COMPENSATION—CONSTRUCTION OF STATUTES.

The primary purpose of the unemployment compensation act is to relieve the distress of economic insecurity due to unemployment, the imposition of a tax upon employers being but incidental, and as it was enacted in the interest of public welfare to provide for assistance to the unemployed, it is entitled to a liberal construction (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

10. COSTS—CONSTRUCTION OF STATUTES—PUBLIC QUESTION.

No costs are awarded in case involving the determination as to who is subject to unemployment compensation act, a public question being involved (U. S. Const. Am. 14; Act No. 1, § 41 [3], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 2, 1942. (Docket No. 2, Calendar No. 41,876.) Decided September 8, 1942.

Certiorari by Arnold H. Godsol, doing business as Nu-Enamel Michigan Company, and another to review an order of the Unemployment Compensation Commission awarding benefits to an employee. Award affirmed. Plaintiffs appeal. Affirmed.

*Sigmund A. Robinson* (*Harry H. Platt,* of counsel), for plaintiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Florence N. Clement* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

SHARPE, J. This is an appeal from a judgment of the circuit court of Wayne county on certiorari affirming an order of the appeal board of the Michigan unemployment compensation commission sustaining the decision of a referee who awarded unemployment benefits to an employee of Arnold H. Godsol, doing business as Nu-Enamel Michigan Company.

The record shows that John T. Willcox was employed by Nu-Enamel Michigan Company from December, 1938, to October, 1939, at which time he voluntarily terminated his employment and thereafter filed a claim with the Michigan unemployment compensation commission for benefits under the unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 8485–41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*]).

Neither the business conducted by plaintiff Arnold H. Godsol under the name of Nu-Enamel Michigan Company nor the business conducted by plaintiff Helen Godsol, his wife, under the name Nu-Enamel Detroit Company in the year 1939 employed eight or more persons, the number requisite to constitute either an "employer" under the act, for at least 20 weeks in such year, although the two businesses combined had a total of more than eight employees for more than 20 weeks within such period.

In 1934, Arnold H. Godsol, having obtained an exclusive distributorship from the Nu-Enamel corporation of Ohio, opened a retail store in the city of Detroit for the sale of its products. He did business as the Nu-Enamel Michigan Company. By 1939, he had disposed of his retail stores and his business became largely wholesale except for a retail department operated at his place of business. In 1935, Mrs. Helen Godsol, wife of Arnold H. Godsol, was in his employ. She received a salary and worked the regular hours of an employee. In 1937, during an illness of her husband, she was authorized to sign checks drawn on the firm account. In 1939, she was present at his place of business four or five days per week. She checked orders, prices, and records. Employees acted on her instructions and looked upon her as the person in charge of the business during the absence of her husband. She has had no financial interest in the Nu-Enamel Michigan Company and received no profits therefrom.

In February, 1937, Mrs. Godsol obtained a sub-distributorship from her husband, leased premises in Hamtramck and opened a retail store. The capital for this venture was not derived from her husband. It constituted her sole and separate estate. Sometime later, she opened a second store using

her own money as capital. All merchandise sold from both stores was purchased from her husband in the same manner and at the same prices that merchandise was sold to other subdistributors. All cash receipts from her stores were deposited in bank accounts in her name. The books pertaining to these stores were kept at Mr. Godsol's place of business by a bookkeeper in the employ of Mr. Godsol, but Mrs. Godsol was charged $10 per month for this service. In the operation of the stores Mrs. Godsol relied to a large extent on the advice and assistance of her husband, who frequently visited her stores, issued instructions and directions to the employees in the stores, called the store managers almost daily for a report on business, interviewed, hired and discharged employees and was more active in the management of the stores than Mrs. Godsol.

Section 41 (3) of the unemployment compensation act as amended in 1937 (Comp. Laws Supp. 1940, § 8485–81, Stat. Ann. 1940 Cum. Supp. § 17.543) provides:

"Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforceable means or otherwise) and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (one) of this section."

John T. Willcox's claim was heard before a referee who held that "the employing unit owned by A. H. Godsol and the employing unit owned by Helen Godsol are affiliated within the meaning of section 41 (3) of the act and, as such, constitute an 'employer.' Therefore, the services rendered by the claimant during the calendar year of 1939 were in

'employment' and the remuneration he received therefrom was 'wages' as defined in this act.''

In his ''reasons for decision,'' the referee said:

''It is my opinion that the record conclusively establishes that A. H. Godsol manages and controls the business of Helen Godsol as well as that owned in his own right. It can reasonably be argued that he has no right to control the business of Helen Godsol. This is admitted and it is further admitted that A. H. Godsol's control over Helen Godsol's business could be terminated by the latter at any time she so desires; that her business belongs to her sole and separate estate. However, the fact remains that to the date of the hearing, A. H. Godsol owned its [his?] own individual business and managed and/or controlled the business of Helen Godsol.''

A. H. Godsol, doing business as Nu-Enamel Michigan Company, appealed to the Michigan unemployment compensation commission appeal board which affirmed the decision of the referee, and said:

''It is the opinion of this appeal board that the great weight of the evidence clearly shows that Arnold H. Godsol in fact actively controlled the employing unit owned by his wife, Helen Godsol, within the meaning of section 41 (3) of the Michigan unemployment compensation act. The record shows that Arnold H. Godsol frequently visited his wife's stores, called store managers for daily reports, and interviewed, hired and fired employees for his wife's stores. Helen Godsol visited her two stores only two or three times a month and relied almost exclusively on the business judgment of her husband in the conduct, control, and management of her stores. Her husband was far more active than she herself was in the actual operations of her retail stores. There is also some evidence of an interexchange of merchandise and personnel between the two employing units.  *  *  *

"The control exercised by Arnold H. Godsol did not amount to mere assistance but consisted of direct control and management of the detailed business transactions of the stores which were registered in the name of his wife."

Upon petition of the Godsols, a writ of certiorari was issued by the circuit court of Wayne county to the commission, the appeal board, and John T. Willcox. The circuit court affirmed the decision of the appeal board and in his written opinion said:

"The commission also found that the husband in truth and fact exercised not only a position of supervisor, but with the authority to hire and discharge employees and make such changes in the management as he, Arnold H. Godsol, deemed expedient.

"Appellants contend that this is not so and that there is no such supervision by the husband as to bring the business of the wife under the affiliation clause with the business of the wife, that it is her own separate estate and is managed entirely by her, and while this presents a very nice question, I do not think that, in view of the decision of the board, it is the controlling issue in this case. Both the referee and the appeal board made a finding that 'Arnold H. Godsol, as a matter of fact, exercised control over the employing unit owned by his wife.'

"There is nothing before us wherein criticism is made of this finding or that it is not supported by the record as made. This was of course a greatly disputed question of fact, and the referee's finding on this question which was sustained by the appeal board, was adverse to the appellants. This being so, and no claim being made that either the referee or the appeal board abused their discretion or that the finding is against the weight of the evidence or tinged with fraud, I am of the opinion that this court has no jurisdiction to review the finding of the appeal board. * * *

"The board has made a finding on the weight of the evidence and that finding is not here questioned. Being of the mind that there is nothing to review in this record which would entitle the appellants to the relief prayed for, it follows that the action of the appeal board be and the same is hereby sustained."

Plaintiffs appeal and contend:

That the word "control," as used in Act No. 1, § 41 [3], Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937, is not synonymous with and equivalent to the word "manage," and that managerial power and authority exercised by a husband over the separate business of his wife, at sufferance, and solely by virtue of marital influence and acquiescence, unaccompanied by legal or beneficial ownership, powers or rights, is not the "control" intended by the legislature in said provision;

That in the absence of the showing of evasive intent, section 41 (3) of the above act does not contemplate or authorize the treatment of separately owned businesses of a husband and wife as a unit for the purpose of determining their subjectivity and liability for tax under the act;

That section 41 (3) of the above act interpreted and applied by the referee, appeal board, and court below is void and unconstitutional and denies plaintiffs rights guaranteed and protected under section 1 of the 14th Amendment to the Federal Constitution and deprives plaintiffs of due process of law and equal protection of the laws contrary thereto, in that:

a. It determines the subjectivity to said act of each plaintiff and imposes upon each a tax, not by reason of the number of his or her employees, but in part, by reason of the number of employees of another:

b. It arbitrarily and capriciously includes plaintiffs in a classification of employers of eight or more persons when plaintiffs are not either in fact or in law such employers;

c. It arbitrarily and unreasonably imposes on plaintiffs a tax not imposed on competitors and others similarly situated employing less than eight persons.

It is to be noted that review of decisions of the appeal board by the circuit court and appeal to this court is provided in section 38 of the act as amended in 1939 which reads as follows:

"Review of questions of fact and law by court. The findings of fact made by the appeal board acting within its powers, if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court of the county in which the claimant resides or the circuit court for the county of Ingham shall have power to review questions of fact and law on the record made before the appeal board involved in any such final decision or determination but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence: *Provided,* That application is made within 15 days after such determination by certiorari or by any other method permissible under the rules and practices of the circuit courts of this State, and to make such further orders in respect thereto as justice may require. The commission shall be deemed to be a party to any judicial action involving any such decision. An appeal may be had from the decision of said circuit court in the same manner as provided by the laws of this State with respect to appeals from circuit courts."

In this case we are limited to a review of the judgment of the circuit court. There is no proce-

dure by which we may review directly any decision of the administrative tribunal. The principal question involved here is whether plaintiffs are "employers" within the terms of the statute.

Plaintiffs contend that the statute does not refer to "control resting on acquiescence, dominance of personality, marital or family relationship or other considerations having no binding force, without title, legal or beneficial interest or ownership or legal means or methods of enforcement," but that section 41 (3) applies only to employing units whose *control as a matter of legal right* is held by the same interests, or an employing unit, which *as a matter of legal right controls* another employing unit.

In our opinion the language of the statute is clear. It does not require legally enforceable control. It states that an employer under the act would be any employing unit "which owns or controls one or more other employing units (*by legally enforceable means or otherwise*)."

In *Maine Unemployment Compensation Commission* v. *Androscoggin Junior, Inc.*, 137 Me. 154 (16 Atl. [2d] 252), a suit was brought to collect unemployment contributions. It appears that a Mr. Healy owned and operated a boys' camp for several years and in 1936 he and two of his camp counsellors organized a corporation to create and operate a separate camp for younger boys. Mr. Healy was to continue the operation of the other camp as before and the corporation was to operate the camp for junior boys. The corporation had three directors. Mr. Healy owned 67-½ per cent. of the stock of the corporation and the other two directors owned the remainder. The commission contended that Mr. Healy had common control of both camps and they constituted an employing unit which, considered as

a single unit, employed eight or more persons. The Maine statute contained a provision precisely the same as section 41 (3) involved in the case at bar. The court said:

"The plaintiff does not claim that Healy owned the company but that he controlled it within the meaning of said section 19 (f) (4).* The control required is not necessarily that legally enforceable. It may be otherwise. It is a matter of actual control. * * * Taking all the facts into consideration, particularly Mr. Healy's relations with the two counsellors before the organization of the company and the fact that they had received their training under him who had carried on a boys' camp business for more than 20 years, it is but natural to conclude that they regarded him as the one whose voice in the conduct of the company's affairs should govern. We find that he controlled this corporation within the meaning of the statute."

In the case at bar, the control exercised by A. H. Godsol did not amount to mere assistance but consisted of direct control and management of the detailed business transactions of the stores which were registered in the name of his wife. It is the kind of control that comes within the purview of the statute.

It is next urged by plaintiffs that the legislature cannot without violating the 14th Amendment of the Federal Constitution provide "that the separately owned businesses of a husband and wife * * * be combined and treated as a unit for the purpose of determining subjectivity to such act and tax." The 14th Amendment is not violated by legislation which applies only to those persons falling within a specified class if it applies alike to all persons within such class and reasonable grounds exist for making

---

* Maine, Pub. Laws 1935, chap. 192, as amended by Pub. Laws 1937, chap. 228.—Reporter.

a distinction between those who fall within such class and those who do not. That the legislature saw fit to include within the terms of the act instances where two or more units were actually controlled by the same interests or where one unit actually controlled another employing unit is not arbitrary nor unreasonable. On the contrary, such provision is necessary in order that the benefits of the act be not denied and the purposes of the act as a whole be not frustrated to many employees by reason of disintegrated ownership and control. A reasonable relationship between the statute and the evil sought to be controlled brings the statute within the limits of constitutionality.

Similar provisions are found in the unemployment compensation act of Connecticut. In *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213 (21 Atl. [2d] 383), that court said:

"The plaintiff's principal contention is that the provision is unconstitutional because it violates the equal protection clause of the State and Federal Constitutions. More concretely it argues that this clause is violated because under the statute other persons engaged in the same, similar, or different businesses, employing like the plaintiff but four employees, are not subject to the tax, compelling it to carry a burden these others are not obliged to bear either in the payment of this or of other taxes of equivalent burden. This presents for determination the question whether the classification made by the statute is arbitrary, unreasonable and unjustified. The applicable legal principles are well settled. 'The equal protection of the laws is accorded when all persons similarly situated are accorded "equal protection under the law in the enjoyment of rights belonging to all." ' * * * Neither of these constitutional provisions require taxation to be equal and uniform, or prevents classification for the purposes of legislation. The classification must, how-

ever, 'be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy.' * * *

"Applying these principles, since the formula established by the statutory provision in question applies to all employers similarly situated, that is, to all employers whose businesses are under common ownership or control, the question is resolved to whether the classification has a fair and substantial relation to the object of the legislation. If it has, it is valid. If it has not, it is arbitrary, unreasonable and capricious, and therefore void. It is apparent from the plan embodied in the act as already stated that its primary object is to relieve against the distress of unemployment, and that the imposition of the tax upon employers is incidental. * * * Pursuant to the act's basic scheme of paying benefits to the employees of every employer of five or more persons, the duty to pay contributions is imposed upon every such employer as defined in it. The payment so required is a proper tax on the exercise of the right to employ, and a numerical classification of this nature is valid. *Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495, 510 (57 Sup. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327). * * * Under the act as originally adopted * * * it was possible for some employers of five or more persons by resort to such a course as that revealed by the facts in this case, to defeat the remedial objects of this legislation. At its next session in 1939, the legislature adopted as an amendment the provision in question. The amendment was adopted in pursuance of a suggestion made by the administrator of the unemployment compensation division with the approval of the advisory council for the division, and the written statement

of the purpose filed with the legislature in connection with the proposal, after referring to the fact that certain employers were taking advantage of this loophole in the 1937 law, continued: 'It seems only fair that the employees of such enterprises should be covered and it seems desirable to keep enterprises from subdividing into separate corporations, partnerships, and individual proprietors, * * * and thus avoiding coverage under the unemployment compensation law.' The content of this provision, effectively worded as the amendment, is to apply to such a situation as the one before us, which the original enactment failed to cover, and to deal with it in a manner in harmony with the general design of the act, considered in connection with the avowed purpose of its enactment, leaves no doubt that the classification prescribed by it has a fair and substantial relation to the object of the legislation. That it is calculated to close an avenue of tax avoidance, of itself lends support to its validity."

The purpose of the unemployment compensation act is to relieve the distress of economic insecurity due to unemployment. It was enacted in the interest of public welfare to provide for assistance to the unemployed and as such is entitled to a liberal interpretation. In our opinion section 41 (3) is not unconstitutional.

The judgment of the circuit court is affirmed. In view of the fact that a public question is involved, no costs will be awarded.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred. WIEST, J., did not sit.