MILLER *v.* F. W. WOOLWORTH COMPANY.

1. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY COMMISSION—EVIDENCE.

The employment security commission has the duty, in administering a public trust fund, to determine whether or not claimants for unemployment compensation have a right thereto by appraising the whole of the evidence brought before it (CLS 1956, §§ 421.36, 421.38).

2. SAME—APPEAL BOARD—QUALIFICATION OF CLAIMANTS.

The appeal board of the employment security commission has the independent duty, as well as plenary authority, to decide a claimant's qualification for unemployment compensation benefits without regard for the fact or nature of opposition either by the employer or the commission (CLS 1956, §§ 421.36, 421.38).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 43, 44.
[3, 5, 7] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 49.
[4] 14 Am Jur, Courts §§ 151, 152.
[6] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 38, 49.
What amounts to "misconduct" which precludes benefits under unemployment compensation act to discharged employees. 146 ALR 243.

3. SAME—APPEAL BOARD—CIRCUIT COURT—GREAT WEIGHT OF EVI-
DENCE.

The reviewing circuit judge may reverse the decision of the appeal board of the employment security commission on what the employment security act calls a question of fact only when that decision is contrary to the great weight of the evidence (CLS 1956, §§ 421.34, 421.36, 421.38).

4. COURTS—PROCEDURE—STATUTES—COURT RULES.

A statutory rule of practice in a circuit court that is not currently in conflict with a court rule promulgated by the Supreme Court is as much an effective rule of practice as if written into the court rules (Court Rule No 1, § 3 [1945]).

5. UNEMPLOYMENT COMPENSATION—APPEAL BOARD—CIRCUIT COURT.

The reviewing circuit court on statutory certiorari to the appeal board of the employment security commission does not pass on the weight of the evidence nor on the credibility of the witness before the board, and the board's finding should not be reversed where there is no total lack of evidence to support the finding made when the total evidence adduced is considered (CLS 1956, §§ 421.34, 421.36, 421.38).

6. SAME—MISCONDUCT—FINDING OF APPEAL BOARD—EVIDENCE.

The technical failure of defendant employer to assign as reason for the discharge of plaintiff soda fountain dishwasher and waitress a series of episodes rather than a particular incident does not affect the finding of the appeal board of the employment security commission that plaintiff was guilty of statutory misconduct disqualifying her for unemployment compensation, where such finding is supported by record presented (CLS 1956, § 421.29).

Per DETHMERS, C. J., and CARR, KELLY, BLACK, and KAVANAGH, JJ.

7. SAME—FINDING OF APPEAL BOARD—EVIDENCE—HEARSAY.

The Supreme Court is bound to affirm the finding of fact of the appeal board of the employment security commission if such fact finding is supported by the great weight of the evidence but not so bound if the administrative agency's finding of fact is contrary to the weight of the evidence or unsupported by competent, not solely hearsay, evidence (CLS 1956, § 421.38).

Per DETHMERS, C. J., and CARR, SMITH, EDWARDS, KAVANAGH, and SOURIS, JJ.

Appeal from Wayne; McCree, Jr. (Wade H.), J. Submitted January 8, 1960. (Docket No. 28, Calendar No. 48,353.) Decided April 11, 1960.

Certiorari by Mary V. Miller against F. W. Woolworth Company and Michigan Employment Security Commission to secure unemployment benefits which had been denied her by commission on ground she had been discharged for misconduct. Judgment for plaintiff. Defendant F. W. Woolworth Company appeals. Reversed.

*John F. Chambers* and *Norman K. Marsh,* for plaintiff.

*Beaumont, Smith & Harris* (*Percy J. Donovan,* of counsel), for defendant F. W. Woolworth Company.

SOURIS, J. (*dissenting*). Mary Miller was an employee of F. W. Woolworth Company for about 9 years. At the time of her discharge on November 22, 1958, she worked as a dishwasher and waitress at defendant company's soda fountain in one of its stores. Upon application for unemployment compensation benefits following her discharge, the Michigan employment security commission determined that plaintiff was disqualified from receiving such benefits, her discharge from employment having been for misconduct connected with her work, within the meaning of section 29 (1) (a) (2) of the employment security statute. CL 1948, § 421.1 *et seq.,* as amended (Stat Ann § 17.501 *et seq.,* as amended). On appeal, the referee and the appeal board of the commission likewise found that plaintiff was discharged for misconduct in connection with her work. The referee found:

"that the employer has affirmatively established, by a preponderance of the evidence, that the claim-

ant carried on a pattern of behavior which was objectionable and inimical to the interests of the employer. It is found that the claimant was discharged after having been given several warnings to improve in her actions."

Specifically, the referee found (and the appeal board affirmed) that Mary Miller's misconduct consisted of "using foul, profane, obnoxious language towards or about supervision, towards customers or in the presence of customers, and otherwise conducting oneself in a manner contrary to the best interests of the employer."

Miss Miller thereupon sought certiorari in the Wayne circuit to review the appeal board's determination. The circuit court found error and entered a judgment of reversal. From such judgment the F. W. Woolworth Company has appealed to this Court.

Section 29 (1) (a) (2) of the act provides that a claimant shall be disqualified from receiving the benefits of the act for the duration of his unemployment where, among other things, the claimant "has been discharged for misconduct connected with his work or for intoxication while at work." CLS 1956, § 421.29 (Stat Ann 1959 Cum Supp § 17.531).

Section 38 of the act provides that "the findings of fact made by the appeal board acting within its powers, if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive" and "said court [the circuit court of the county in which the claimant resides] may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence." CLS 1956, § 421.38 (Stat Ann 1959 Cum Supp § 17.540).

As we view this appeal, the only question presented to the Wayne county circuit court for decision (and

the only question presented to this Court) was the adequacy of the evidence considered by the appeal board, upon which evidence the appeal board found that plaintiff had been discharged for misconduct connected with her work. We are bound by the legislative mandate contained in section 38 of the act to affirm the appeal board's finding of fact if such fact finding is supported by the great weight of the evidence. *Peaden v. Employment Security Commission*, 355 Mich 613. But, we are not bound to affirm when the administrative agency makes findings of fact contrary to the great weight of the evidence or, as in this case, in the absence of any competent evidence to support such findings of fact.

The referee and the appeal board found, as a fact, that the reason plaintiff was discharged was her misconduct connected with her work. Careful review of the record made before the referee (no additional evidence having been required by the appeal board as it is empowered to do by section 34* of the act) discloses no competent evidence that plaintiff was discharged for misconduct. There should be no misunderstanding on this point. Plaintiff may well have been discharged for actions constituting misconduct within the meaning of the act, but be that as it may, defendant failed to produce below any evidence competent for consideration (and such evidence apparently was available to it) to establish the reason for plaintiff's discharge.

Defendant produced 2 witnesses in its behalf, Mr. Spetter and Mrs. Cox. Mr. Spetter was the manager of its store in which plaintiff was employed. Mrs. Cox was manager of the store's soda fountain where plaintiff was assigned to work. Mr. Spetter, not Mrs. Cox, fired plaintiff. It was incumbent upon defendant to prove the reason for plaintiff's dis-

---

* CLS 1956, § 421.34 (Stat Ann 1959 Cum Supp § 17.536).—RE-PORTER.

charge, and, in cases of this kind where discharge for misconduct connected with an employee's work may disqualify her from receiving benefits under the act, it was also incumbent upon defendant to prove by competent evidence that the reason for discharge was such misconduct.

Mr. Spetter's testimony can be summarized briefly as follows: He had received complaints from customers and from other employees about plaintiff's use of foul language and insolent conduct, but he had never been present at the occurrence of any of the incidents related. He knew nothing about plaintiff's conduct except what others had told him not in the presence of plaintiff. He was unable to testify from his own knowledge about any act of misconduct by plaintiff for which he discharged her. As a matter of fact, the incident which caused Mr. Spetter to "make up his mind to take action" against plaintiff, and the real reason for which the trial court found plaintiff to have been discharged on November 22, 1958, was a complaint received from one of the employees (not otherwise identified) concerning plaintiff's conduct in serving a customer a grilled cheese sandwich. Upon proper objection having been made at the hearing before the referee, this testimony was ordered stricken. The net result of Mr. Spetter's testimony was that he fired plaintiff because he had received complaints regarding her conduct from unnamed customers and other employees. Had such customers or other employees been presented as witnesses to testify regarding their observations of plaintiff's conduct which they reported to Mr. Spetter, defendant might have succeeded in proving the reason for its discharge of plaintiff was for misconduct connected with her work.

The only other witness offered by defendant was Mrs. Cox, who related in some detail her trials and tribulations with Mary Miller. If Mrs. Cox were

believed, and it is clear that the referee and the appeal board did believe her, there had long been ample reason to discharge plaintiff. The difficulty in equating the testimony of Mrs. Cox to Mr. Spetter's reasons for discharging plaintiff is found in the following examination of Mrs. Cox by counsel who then represented defendant:

"*Q.* Mr. Spetter has testified that he discharged Mary on November 22, 1958. Did you have anything to do with her separation?

"*A.* Not on that date, but the day before that when she had sassed me back before a customer when I asked her and told her there was a customer to be waited on and she said, 'So what?' Just the same as to say the customer didn't mean nothing. I went to Mr. Spetter and asked him to let me give up managing the fountain rather than to take that before her, which I had taken a lot of times before. But that wasn't the day that he discharged her.

"*Q.* Now, on any other occasion did you report to —or would you report to Mr. Spetter in regard to this girl?

"*A.* No. That was the only time. I always took it off of her before."

The only time Mrs. Cox ever reported or complained of plaintiff's conduct to Mr. Spetter was on November 21, 1958, when plaintiff "sassed me back before a customer". Mr. Spetter's testimony about this complaint was, "We had had a little trouble the day before," but he did not say anything to plaintiff about it for the reason that he did not want to lay her off because he needed that kind of help with Christmas approaching.

The only competent evidence of misconduct by plaintiff was offered by Mrs. Cox. None of the incidents related by her at the hearing, which could be construed by this Court as constituting misconduct within the meaning of the act, was reported to Mr.

Spetter, nor was there any evidence that anybody else reported thöse incidents to Mr. Spetter. The only thing Mr. Spetter knew about the relationship between Mrs. Cox and plaintiff was the "sassing" of Mrs. Cox by plaintiff on the day before plaintiff's discharge. But, as indicated above, Mr. Spetter had his own reasons for not discharging plaintiff for "sassing" Mrs. Cox. Thus, the record is barren of competent proof of any misconduct by plaintiff *for which she was discharged.*

The act disqualifies from its benefits a claimant "discharged for misconduct connected with (her) work". To invoke the bar of disqualification, discharge must be proved to have been for misconduct. The appeal board should have awarded plaintiff benefits under the act, defendant having failed to prove by competent evidence that the cause for plaintiff's discharge was her misconduct. Mr. Spetter's testimony about plaintiff's conduct, for which he discharged her, consisted entirely of hearsay and was not entitled to be given any evidentiary weight whatever by the appeal board in determining whether or not plaintiff was disqualified from the benefits of the act. Mrs. Cox's testimony about plaintiff's conduct, on the other hand, although disclosing ample grounds for discharging plaintiff, should not have been considered by the appeal board because it was not proved that plaintiff was discharged for the conduct about which Mrs. Cox testified.

Accordingly, the judgment of the circuit court reversing the order of the appeal board should be hereby affirmed. Costs to plaintiff.

SMITH and EDWARDS, JJ., concurred with SOURIS, J.

BLACK, J. The portents of Mr. Justice SOURIS' motion—to affirm reversal of this administrative decision—are doubly disturbing. He suggests that the

circuit court may, on issuance and return of certiorari to review a decision of the appeal board of the employment security commission, introduce for the purposes of appellate decision the issue-framed controversy-features of a common-law action; whereas the proceeding brought up by the writ is purely administrative in nature, quite as nonadversary as legislation can make it, and subject to specially limited review when due return of the writ is made.

There is no solutional difficulty in this case once we perceive that Miss Miller has neither sued nor drawn upon her employer as at law; that she has applied to the employment security commission for benefits according to procedures authorized by the statute under which she claims; that the commission itself is designated by the statute as "an interested party" (see sections 36 and 38 of the act, CLS 1956, §§ 421.36, 421.38 [Stat Ann 1959 Cum Supp §§ 17.538, 17.540]); that the participant function of the commission is that of statutory administrator of a public trust fund the claimant may or may not have a right to tap depending on administrative appraisal of the whole of the evidence brought before its administrative arms; and that the appeal board (when called upon) is vested with independent duty as well as plenary authority to decide each claimant's qualification for benefits without regard for the fact or nature of opposition, if any, by the employer or, for that matter by the commission itself.

Let the point be tested by this simple question: May an employer stipulate for payment of benefits as claimed, or fail to object properly to payment of such benefits, and so bind the referee and appeal board to a decision in favor of the claimant? If not, and surely the answer must be "No," the employer's action or inaction during the course of such an administrative hearing interferes not one whit with the

appeal board's duty and authority to decide for or against the claimant's qualification for benefits "on the basis of evidence" before it.

*First:* To me the presently proffered opinion is an unabashed motion to depart from established rules which, so far, have restricted the scope of judicial review of administrative decisions; to circumvent the administrative duty-provisions of section 34 of the employment security act (CLS 1956, § 421.34 [Stat Ann 1959 Cum Supp § 17.536]), and to ignore at least for this case of Miller our obligation and that of the circuit court to limit review to the limited questions outlined in section 38 of the statute and our decisions construing that section.

The most recent declaration of our function, on review of unemployment benefit cases, appears in Mr. Justice SMITH's opinion of *Knight-Morley Corp.* v. *Employment Security Commission,* 350 Mich 397, 411,* the substance of which was adopted in *Jerry McCarthy Highland Chevrolet Co.* v. *Department of Revenue,* 351 Mich 558, 566. That declaration embodies the procedural rule that the reviewing circuit judge may reverse the appeal board's decision (on what the statute calls "a question of fact") when and only when that decision "is contrary to the great weight of the evidence."

So far at least, decisions of the appeal board are reviewable in circuit only by certiorari. See men-

---

* The *Knight-Morley* opinion of Mr. Justice SMITH opened and concluded with these significant observations:

"It is not our function, nor that of one of our subordinate courts, to substitute our judgment on the facts for that of the fact-finding tribunal, or to usurp the function that the legislature has vested in the agency. We have not been free from such usurpation in the past (*Hazel Park Racing Association, Inc.,* v. *Racing Commissioner,* 343 Mich 1) and it should not continue." (pp 417, 418.)

"We conclude that under the statute here before us our scope of review is no broader than that exercised by us in setting aside a jury's verdict, our latitude no greater. It may, indeed, due to the differing considerations of skill, policy, and function of the fact-finding tribunals in the governmental process, be far narrower." (p 421.)

tioned section 38 of the employment security act. The scope of review includes the power and duty of judicial ascertainment *inter alia,* of the specific legal question: Whether the scrutinized administrative decision is or is not contrary to the great weight of the evidence? Since the statute does not conflict with any present court rule, it is an adopted rule of practice by virtue of section 3 of Court Rule No 1 (1945) (see corresponding application of said section 3 in *Darr* v. *Buckley,* 355 Mich 392, 396). It follows that when the writ is issued and returned as in said section 38 provided, it brings to the court of issuance (and to this Court in turn) questions of law only. See discussion of this point in the respective opinions of *Imlay Township Primary School District No. 5* v. *State Board of Education,* 359 Mich 478. And see the conclusion of Mr. Justice SMITH's dissenting opinion of *Lenz* v. *Mayor of Detroit,* 343 Mich 599, 610 (with which conclusion I agree), reading as follows:

"Moreover, we are committed to the well-established and salutary rule that in our review of certiorari we pass neither on the weight of the evidence nor on the credibility of the witness. There being no total lack of evidence to support the finding of the trial court, we will not disturb it on certiorari or on review thereof. *Gaines* v. *Betts,* 2 Doug (Mich) 98; *Randolph* v. *City of Dearborn,* 298 Mich 224; *Great Lakes Greyhound Lines* v. *International Union, UAW–CIO,* 341 Mich 290. There is no error of law in this case."

Now what, the present record examined, is before us? Is it not this limited question: Whether the appeal board's finding of disqualificationary misconduct is—as a matter of law—contrary to the great weight of the total evidence adduced, rather than contrary to the great weight of that portion of such evidence my Brother has selected as his target? More of this later.

I would turn immediately to the reasonably por-
tentous consequences of a decision upholding this
employee's claim as against this record-supported
finding of the appeal board. No matter how pious
our protestations to the contrary may be, the present-
ly proposed jury-room analysis of testimony given
before Referee Sternberg, and my Brother's pick-
and-choose conclusions* from such analysis that no
proof supports the administrative finding of statu-
tory misconduct, are bound to expose the holy flanks
of this Court to open criticism, hitherto veiled, that
some of our membership are rigidly wont to apply
the orthodox rule of limited review on certiorari to
the appeal board when the board's decision favors
benefits as claimed; yet fail to do so when the board
happens to deny such benefits (compare the respec-
tive opinions of *Knight-Morley, supra,* with those of
*Peaden* v. *Employment Security Commission,* 355
Mich 613). When I signed Mr. Justice SMITH's
opinion of *Knight-Morley* it was on the supposedly
dependable assumption that all signers were com-
mitting themselves to the judicial-administrative
doctrines of Stason and Stone (quoted on pages 420
and 421 of *Knight-Morley's* report) and to the cor-

---

* "In fact what the court did was to make its own appraisal of
the testimony, picking and choosing for itself among uncertain and
conflicting inferences."

This quotation is from the supreme court's unanimous judicial-
administrative opinion of *Federal Trade Commission* v. *Algoma Lum-
ber Company,* 291 US 67, 73 (54 S Ct 315, 78 L ed 655). The opinion
was written by Mr. Justice Cardozo, and the quotation was made one
of the principal buttresses of Mr. Justice SMITH's thoroughgoing dis-
sertation, in *Knight-Morley, supra,* upon the slender and limited
function of the courts when they are called upon to review decisions
of administrative tribunals. Did not Justice SMITH say, with con-
currence of 3 additional members of this Court and formal majority
adoption thereof later (in *McCarthy, supra*):

"If such words as overwhelming weight, great weight, and clear
weight have approximately the same content ,we would be justified
in saying that we should not reverse the finding of the administrative
tribunal on an issue of fact unless we would set aside a jury verdict
under similar circumstances."? (pp 419, 420 of *Knight-Morley's* re-
port.)

responding analogy of test on review of a jury's verdict when the latter is assailed as in *McConnell* v. *Elliott*, 242 Mich 145, 147 (quoted by Mr. Justice SMITH on page 419 of *Knight-Morley's* report). The fact is that we cannot escape, if affirmance in this case of Miller be our will, the appearance of having strained mightily to find some devious way—when there is no rightful way—to a holding that these administrative findings of fact do not support the appeal board's decision.

I suggest that my Brother has overlooked the meaningful feature of administrative proceedings which under the employment security act are supposed to determine the right of a claimant to unemployment benefits. Legal issues are not framed, on pleadings or otherwise, as in our common-law courts. The proceeding is wholly statutory. Its purpose is to determine whether benefits, when applied for, shall or shall not be paid from a public fund of public trust. The fund is not that of the employer in any sense. Whether he opposes the claim or not, the responsibility of the commission and its administrative arms with respect thereto remains the same. Such fund is made up and maintained almost wholly by contributions exacted of employers generally and nationally under "the legislative scheme for unemployment compensation induced by the provisions of the social security act of 1935" (see footnote 2, *Unemployment Compensation Commission of Alaska* v. *Aragon*, 329 US 143, 145 [67 S Ct 245, 91 L ed 136]). For these reasons I hold that the technical failure of this employer to assign as reason for discharge "a series of episodes," rather than a "particular incident," does not affect the board's finding of statutory mis-

conduct* if, as the circuit judge conceded below and my Brother concedes here,† the testimonial record does actually contain evidence of such misconduct.

*Second:* This leaves the bare question whether the total evidence adduced before the appeal board supports, legally according to our quoted test on judicial review, its finding of disqualifying misconduct on the part of Miss Miller.  I think it does. Here is the record upon which I conclude that the circuit judge had no alternative other than to affirm the appeal board (quotation from referee's findings as confirmed by the appeal board) :

"Employer's witness testified that, from time to time, the claimant became irritable and handled the dishes roughly.  When claimant was directed to perform some work, she would flare up and would become upset, and resorted to foul language.  She used foul and profane words in reference to her employer, in her conversations with customers, and in the presence and hearing of customers.  Claimant was warned repeatedly about her conduct, and about her attitude towards her supervisor.  The situation had become so sufficiently obnoxious by November 21st, that, at that time, claimant's supervisor appealed to the store manager and asked to be released or transferred from her position, because she could not 'take it any more,' she could not stand the claimant's abuses.  Claimant was discharged for these reasons on November 22, 1958."

The testimony upon which these findings are based was given principally by Mrs. Cox, manager

---

* To bring the concession into direct focus, I quote it from my Brother SOURIS' opinion as follows:

"Mrs. Cox's testimony about plaintiff's conduct, on the other hand, although disclosing ample grounds for discharging plaintiff, should not have been considered by the appeal board because it was not proved that plaintiff was discharged for the conduct about which Mrs. Cox testified."

† See CLS 1956, § 421.29 (Stat Ann 1959 Cum Supp § 17.531).—
REPORTER.

of the soda fountain and supervisor of the fountain help (including Miss Miller). Mrs. Cox connectedly testified:

"*Q.* In regard to her conduct other than sassing you back? You said you warned her, told her customers come first?

"*A.* Oh, yes. I've warned her about that different times, and the different things that she would do when I would tell her to do, why she'd usually have a comeback to me. But I just took it as long as I could take it.

"*Q.* Did you witness at any time her use of swear words?

"*A.* You mean actually a swear word, swearing at me?

"*Q.* Or at anyone while she was working?

"*A.* Not particularly at anyone. It was just using foul language in the fountain.

"*Q.* Did you ever—  *  *  *

"*A.* Well, one time I was—especially on making up sundaes and different things. She was always using the wrong—I mean too much, more than what you're supposed to put on. One time I was trying to more or less scare her to get her out of it, and I told her, I said, 'Mary, Mr. Spetter is really going to get after you if you keep using 2 dippers of fudge on those hot fudge sundaes.' She said, 'To hell with Mr. Spetter.'

"*Mr. Chambers:* When was this?

"*A.* Well, that was, oh, I'd say 6 weeks before she was discharged.

"*Q. (By Mr. Galloway):* Was that the only foul language that you ever heard her—

"*A.* That's the only one she ever said back to me, but I have heard her say, 'This damn place.' That is to customers. Not to me. To customers."

To conclude: I would say that the circuit judge misapprehended his limited judicial function in 2 separate respects. He determined that it was his

right to make a new and independent finding of fact for decisional purposes, and then determined that he was free to disregard Mrs. Cox's testimony for reasons given by him as follows:

"*Mr. Donovan* (employer's counsel): Would you take this, Mr. Reporter, please?

"What I am anxious to be sure of is whether the court is disposing of this matter as a question of law or as a question of fact?

"*The Court:* Well, it isn't always easy to say where a question of law begins and a question of fact ends. My reason is that Mr. Spetter, the employer's witness, who has shown remarkable forbearance and tolerance in this situation, has assigned a reason for the discharge of plaintiff, and I find that since he relies upon an incident by competent evidence, and that there is no competent evidence establishing it.

"Now, the referee below appears to have ignored his stated reason and to have found as a matter of fact that the discharge was based upon the previous experiences Mr. Spetter and others in supervision had had with the employee. To this extent my finding of fact differs from that of the referee. If I should have made the same finding of fact which he did, that the discharge was based upon a series of episodes rather than as this person testified, upon the particular incident, then I would find that there was evidence to support the conclusion of misconduct and the resultant discharge."

I vote to reverse and remand for entry of order affirming the decision of the appeal board.

KELLY, J., concurred with BLACK, J.

DETHMERS, C. J. *(concurring)*. I concur in Mr. Justice BLACK's conclusion, holding for reversal of the circuit court and affirmance of the appeal board, and in the legal reasoning by which he reached that result. I agree with his statement of the nature of

review here and the function of this Court and the circuit court in unemployment compensation appeals. Whether they are supported by or are contrary to the great weight of the competent evidence is the test to be applied to appeal board findings of fact on review. I agree that they are so supported here. In making such determination we may and do look to the competent evidence and the reasonable inferences to be drawn therefrom.

At the same time, I wish to express concurrence in Mr. Justice Souris' requirement that the evidence to be considered must be competent evidence. I am in accord with his position that the rules of evidence, including the hearsay rule, applicable in courts of law, also govern in these proceedings.

Carr and Kavanagh, JJ., concurred with Dethmers, C. J.

Smith, J. (*dissenting*). The pair of cases* on misconduct, now before the Court, one of which is decided this date, are valuable to the profession despite the splintering of the Court. They serve to demonstrate better than any hypothetical illustration that rules of thumb framed in terms of "questions of fact" as opposed to "questions of law" will not serve as a substitute for a painstaking analysis of the underlying principles of law presented in a given situation.

There is no doubt, of course, that a simple issue of fact may, indeed, be presented to the appeal board. This was the situation in *Knight-Morley Corporation* v. *Employment Security Commission,* 350 Mich 397, where both divisions of an equally divided Court agreed that only a factual issue was presented. The evidence was conflicting. One division of the Court,

---

* The other case, here referred to, is *Bell* v. *Employment Security Commission,* 359 Mich 649, decided June 6, 1960.—Reporter.

for which spoke the writer hereof, held that in such situation, described as "one of the simplest possible issues of fact," the circuit court was not justified in reversing the decision of the appeal board on the ground that its resolution of a controverted factual determination was contrary to the "great weight of the evidence."

We expressly left "to future cases, as they arise, the enunciation of criteria for distinguishing the so-called questions of law from questions of fact in the more complex situations (Davis, Administrative Law, ch 20), to the degree that such is possible, and the factors involved in their resolution."

One of such cases is now here. Here the issue is this: If a discharge purportedly for a specified act of misconduct is not supported, may the discharge be upheld, nevertheless, on general principles? This is not the simple fact issue ruled upon in *Knight-Morley, supra.* The circuit judge and my Brother SOURIS say no, that if the incident asserted as grounds for discharge is not substantiated by competent testimony the discharge fails. They refuse to rake over the old coals to unearth some spark of defiance that at one time might have justified discharge but was then ignored. The evidence they look to in complying with the statutory requirement of "great weight"* is the evidence relating to the particular grounds of discharge asserted and relied upon.

My Brother BLACK, however, would look at the "total" evidence before the board, the evidence that the claimant was irritable, would flare up, and all the rest quoted by him. She was undoubtedly a cantankerous individual. But she was not discharged for being cantankerous. The store manager weighed her personality difficulties against his need for help ("I didn't want to lay Mary off because I needed that

* Section 38 (CLS 1956, § 421.38 [Stat Ann 1959 Cum Supp § 17-.540]).

kind of help with Christmas coming on") and condoned her conduct. Later she was discharged, for the so-called grilled cheese sandwich episode, as to which the circuit court held there was no competent evidence.

The legal issue thus presented is whether the discharge of an employee for an alleged act of misconduct, can, if there is no competent evidence of such misconduct, be upheld on the ground that, well, anyway, she was hard to get along with. If so, then Mr. Justice BLACK is right. We would look at the total evidence, everything she did. If not, if we look only to substantiation of the particular incident alleged, Mr. Justice SOURIS is right, and since there was no competent evidence to support the discharge, hold that there has been error of law by the appeal board. For reasons indicated, I believe with Justice SOURIS that when the discharge, as here, is grounded upon certain, specific misconduct, it must be supported by evidence of that certain, specific misconduct. This is not to say that an employee may not be discharged for a course of misconduct. But here the discharge did not purport to be for such.

The *Knight-Morley* principle, *supra*, as to the finality of the appeal board's factual determinations, would be applicable, in due course, to either position. Our division relates not to *Knight-Morley* but to the legal principles governing discharge for misconduct.

Subject to the above I agree with Mr. Justice SOURIS. The judgment should be affirmed. No costs.

EDWARDS and SOURIS, JJ., concurred with SMITH, J.