REED *v.* EMPLOYMENT SECURITY COMMISSION.

UNEMPLOYMENT COMPENSATION—GARNISHMENT—MISCONDUCT CONNECTED WITH EMPLOYEE'S WORK—DISQUALIFICATION FOR BENEFITS.
Breach of employer's rule against successive garnishment of an employee's wages being served on the employer does not, as a matter of law, disqualify the employee from receiving unemployment compensation, since it is not "misconduct connected with his work" (CLS 1956, § 421.29).

Appeal from Wayne; Arch (Charles O.), J., presiding. Submitted January 11, 1961. (Docket No. 3, Calendar No. 48,400.) Decided September 23, 1961.

REFERENCES FOR POINTS IN HEADNOTES
48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 35, 38.

Willie Reed presented his claim to the Michigan Employment Security Commission and Grant Brothers Foundry Co., for unemployment compensation. Claim denied because of his discharge as a result of excessive garnishments. Plaintiff appeals. Reversed and remanded.

*Bernard J. Fieger,* for plaintiff.

*Love, Snyder & Lewis* (*Robert L. Halbrook, Jr.,* of counsel), for defendant Grant Brothers Foundry Co.

*Amicus Curiae:*

*Henry Glicman,* for Clinton Gaston.

DETHMERS, C. J. Plaintiff was employed by defendant company. It had established a rule that an employee would be discharged from employment if a second writ of garnishment of his wages were served upon the company. Within a period of 9 months, 4 garnishments of plaintiff's wages were served on it. In consequence, he was discharged.

Plaintiff thereafter applied for unemployment compensation. The case went from commission, to referee, to appeal board and circuit court and is now here on appeal from a holding and judgment of disqualification for benefits because, in the language of the statute (CLS 1956, § 421.29 [Stat Ann 1960 Rev § 17.531]), he had been "discharged for misconduct connected with his work."

Was plaintiff discharged for a cause that constituted misconduct connected with his work? We are cited to no applicable appellate court decisions. Counsel undertake to compare or distinguish cases decided, with varying or opposite results, by referees, appeal boards or circuit or other trial courts

on the basis of facts with respect to such things as number and frequency of garnishments, the employee's economic, physical or mental condition, and ability or inability to avoid indebtedness, et cetera. We do not discuss or consider them because we deem the question as to whether garnishment of an employee's wages constitutes misconduct, on his part, connected with his work, to be one of law and not of facts to be decided on a case-to-case basis.

Misconduct is conduct that is wrong. Plaintiff's conduct here involved was the incurring of an indebtedness and failure to discharge it. By some standards it may have been wrong. Whether or not, for the purpose of cases like this, it was disqualifying misconduct depends on the legislative intent and meaning of the statute and not merely on the promulgation of a company rule against garnishments. Garnishment of plaintiff's wages may well have been a nuisance to defendant company. Many acts of an employee might meet with the displeasure or disapproval of an employer and be prohibited by rule by him. Breach of such rule might, in a sense, be considered misconduct warranting discharge from employment. Unless the rule and its violation bear some reasonable application and relation to the employee's task, can the breach be said to be misconduct within the disqualifying language of section 29(1) (a)(2) of the statute? The purpose of the act is to benefit unemployed in financial straits, not to penalize them for being in that condition. We do not believe that the language of the statute discloses or its purpose permits reading into it a legislative intent to stamp the conduct here involved as misconduct within the meaning of the cited section.

If plaintiff's going into debt and failure to pay were to be deemed misconduct, it was in no wise connected with his work, even though the consequences might in some manner affect his employer.

The statute expressly limits the disqualification to misconduct connected with his work.

We do not suggest that infraction of a company rule governing conduct on the job or connected with the work may never amount to disqualifying misconduct. Here, however, we have a rule of selection rather than one of conduct. That is to say, the rule does not govern an employee's conduct connected with his work, but, rather, sets forth a condition of employment and continuance therein. It covers the selection and retention of employees, not their conduct on the job or connected with their work. Breach thereof may entitle the employer to discharge his employee, but such discharge is not for misconduct connected with his work as contemplated by the statute.

· Reversed, with costs to plaintiff, and remanded to circuit court for remand by it to the appeal board and disposition there in accord herewith.

CARR and KELLY, JJ., concurred with DETHMERS, C. J.

TALBOT SMITH, J. (*concurring*). Once again we are confronted with an attempt to use the employment security act as a little labor relations act. The effort here, as in previous cases, is to use unemployment compensation as a disciplinary tool, to penalize an employee who breaks a company rule not only by firing him from his job, but by pursuing him to his home and removing both him and his family from the benefits of unemployment compensation. The theory involves the idea that it is not enough that the employee be discharged for breaking a company rule. It goes further: It seeks to impose a penalty over and beyond the firing. We hold here, as we have held heretofore, that such was not the legislative intent. The entire matter is discussed in detail

in *Cassar* v. *Employment Security Commission,* 343 Mich 380, *Linski* v. *Employment Security Commission,* 358 Mich 239, overruling *Cassar, supra* (*Cassar* was relied upon by the trial court, *Linski* then not having been decided), *Bell* v. *Employment Security Commission,* 359 Mich 649, and *Jenkins* v. *Employment Security Commission,* 364 Mich 379.

We have never been impressed by the argument that a legislature legislates by keeping quiet. This theory, as our profession so well knows from its ·constant use, is that the legislature scans the advance sheets and old State reports to determine what we did right last term, or in the last year, or years, and what we did wrong. It then follows (we are still speaking of the theory) that legislative silence with respect to any holding indicates that we did right, in the legislature's opinion, and hence for some unclear reason we are powerless to change that holding in the future should we be convinced of former error. I paid my respects to this doctrine in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, 599, and indicated a lack of conviction with respect thereto. In plainer terms I held it was unjustified as a matter of fact and unsound as a matter of theory. Nevertheless, for those to whom the doctrine furnishes a staff of judicial reliance, I would observe that the case of *Linski* v. *Employment Security Commission, supra,* overruling *Cassar, supra,* has now been in the books since 1959. Legislatures have come and gone since that time without tampering with the holding. If the approval-by-silence doctrine has any validity, it would appear that they approved of what we there held. It would seem to follow that all of us, original majority and original dissenters alike, may now rely upon *Linski* and the cases which have followed it as establishing the law of the State with respect to this much-litigated issue of misconduct in unemployment compensation cases.

Subject to the above, we concur in reversal and remand.

Edwards, Kavanagh, and Souris, JJ., concurred with Talbot Smith, J.

Black, J. (concurring). There is no dispute of fact in this case. The question is whether—in view of the stipulation for discharge contained in this contract of employment—section 29 authorizes or directs a separate penalty (over and above discharge in event a second writ of garnishment is served upon the employer); such separate penalty being that of adjudication of statutory "misconduct." I agree with Justice Smith that our answer should be in the negative.

Five connected sentences, appearing in the prevailing opinion of *Linski* v. *Employment Security Commission*, 358 Mich 239, key and spell out the answer to this question. Quoting (p 245):

"Claimant's action is termed wrong because it was not in accordance with the terms of the contract concerned. The record discloses this to be true. And the record also shows that the contract penalty of discharge has been applied. We can find no warrant for adding to the contract penalty for breach still another penalty not squarely spelled out in the statute. See *T. R. Miller Mill Co., Inc.,* v. *Johns,* 261 Ala 615 (75 So2d 675)."

I concur in reversal, noting with Justice Smith that Judge Arch followed—quite properly—*Cassar* v. *Employment Security Commission,* 343 Mich 380.* Judge Arch ruled March 9, 1959. *Cassar* then laid down the rule to which our circuit judges owed allegiance. It was not overruled until November 25, 1959 (by *Linski, supra*).

---

* Presumably, *Cassar* being alive at the time, the appeal board also was influenced by that decision when it decided against this plaintiff.