HELZER v METZGAR CONVEYOR COMPANY

Docket No. 77-3220. Submitted March 8, 1978, at Grand Rapids.—
Decided May 1, 1979.

Lawrence G. Helzer was discharged from his employment by
Metzgar Conveyor Company. He applied for unemployment
benefits and was found by a referee of the Employment Secu-
rity Commission to have been discharged for misconduct con-
nected with his work and that he was therefore disqualified
from receiving benefits for a period of six weeks. The referee's
decision was upheld by the Employment Security Commission
Appeal Board and Helzer sought review in the Kent Circuit
Court, which upheld the denial, George R. Cook, J. Helzer
appeals. *Held:*

The referee's finding that Helzer had engaged in a pattern of
misconduct was supported by the evidence, and the decision
that the misconduct was sufficient to disqualify Helzer from
receiving benefits for the statutory period was in conformance
with both the law and the evidence.

Affirmed.

M. F. CAVANAGH, P.J., dissented. He would hold that the
circuit court erred by failing to review the issue of misconduct,
and that neither of the two acts complained of were sufficient
to bring Helzer's activities within the definition of misconduct
under the statute. Likewise, he would hold that the two acts
viewed together did not constitute a pattern of misconduct
sufficient to deprive Helzer of unemployment compensation
benefits. He would reverse.

OPINION OF THE COURT

1. UNEMPLOYMENT COMPENSATION — DISCHARGE OF EMPLOYEE —
MISCONDUCT — STATUTES.

An employee who is discharged for misconduct may be disquali-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 76 Am Jur 2d, Unemployment Compensation §§ 52-54.
Work-connected inefficiency or negligence as "misconduct" barring
unemployment compensation. 26 ALR3d 1356.
[2] 2 Am Jur 2d, Administrative Law § 549.
[4] 76 Am Jur 2d, Unemployment Compensation § 6.

fied from receiving unemployment compensation where the misconduct evinces such wilful or wanton disregard of the employer's interests as is found in deliberate violations or disregard of standards of behavior rightfully expected by the employer, or carelessness or negligence of such degree as to manifest equal culpability, wrongful intent or evil design, or to show intentional and substantial disregard of the employer's interests or of the employee's duties and obligations (MCL 421.29[1][b]; MSA 17.531[1][b]).

DISSENT BY CAVANAGH, P.J.

2. ADMINISTRATIVE LAW — EMPLOYMENT SECURITY COMMISSION — APPEAL AND ERROR — STANDARD FOR REVIEW — STATUTES.

*An order of the Employment Security Commission may be reversed by a reviewing court only if the decision is contrary to law or is unsupported by competent, material evidence on the whole record; where no dispute exists as to the underlying facts the question presented is the proper application or interpretation of the law (Const 1963, art 6, § 28; MCL 421.38; MSA 17.540).*

3. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — EMPLOYEE MISCONDUCT — STATUTES.

*An employee's action in breaking down a door in the employer's place of business did not constitute misconduct sufficient to justify disqualification from payment of unemployment benefits where the action was neither a breach of duty endangering human life and property nor was it fundamentally disruptive of orderly conduct of work and of the employer's right to direct the work (MCL 421.29[1][b]; MSA 17.531[1][b]).*

4. UNEMPLOYMENT COMPENSATION — REMEDIAL PURPOSE — LIBERAL CONSTRUCTION.

*The unemployment compensation act is remedial in purpose and must be liberally construed.*

5. UNEMPLOYMENT COMPENSATION — MASTER AND SERVANT — EMPLOYEE MISCONDUCT — PATTERN OF MISCONDUCT.

*The fact that two instances of misconduct of an employee are distant in time from one another does not prevent a finding of a pattern of misconduct sufficient to disqualify the employee for unemployment compensation; however, such a determination should be based on the "total picture" to consider the consistency, duration and gravity of the employee's conduct, and where the behavior was not so continuous and egregious that it*

> *evidences his utter disregard for the employer's interests a
> finding of a pattern of misconduct is erroneous (MCL
> 421.29[1][b]; MSA 17.531[1][b]).*

*Michael Nelson,* Legal Aid & Defender Association of Kent County, for plaintiff.

*Miller, Johnson, Snell & Cummiskey* (by *Brent D. Rector),* for defendant Metzgar Conveyor Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James H. White,* Assistant Attorney General, for the Employment Security Commission.

Before: M. F. CAVANAGH, P.J., and D. E. HOLBROOK and BEASLEY, JJ.

BEASLEY, J. Plaintiff appeals from a determination by a referee for the Michigan Employment Security Commission (MESC) disqualifying him from unemployment benefits for a six-week period.[1] The referee found that the plaintiff had been discharged for "misconduct connected with his work" pursuant to MCL 421.29(1)(b); MSA 17.531(1)(b). This decision of the referee, which was affirmed by both the appeal board and the circuit court, is supported by competent, material evidence on the whole record.[2] The referee made the following findings of fact after hearing the contradictory testimony regarding a two-by-four thrown through a window on April 18, 1974, and damage to a cafeteria door on December 30, 1974:

---

[1] This disqualification period was based on the version of MCL 421.29(3); MSA 17.531(3) then in effect. Subsequently, the statute was amended, effective June 6, 1975, to provide a 13-week disqualification period for benefits where an employee is discharged for misconduct under MCL 421.29(1)(b); MSA 17.531(1)(b). See, 1975 PA 110, § 1.

[2] Const 1963, art 6, § 28; MCL 421.38; MSA 17.540.

"The claimant worked approximately one year for this employer as a machinist. On or about December 30, 1974 while in the plant, he came through one of the doors with such force that the hinges were bent, two bolts were knocked out, and the portion of the air stopper on the door attached to the frame was pulled out. This is a Union shop, and he was terminated and subsequently filed a grievance, which was to no avail.

"The claimant contends he just opened the door and that someone prior to that had loosened the bolts, and to the best of his knowledge there was no damage. The employer witness stated it took him 1 1/2 to 2 hours of labor, plus two bolts, and he straightened the door out with a hammer and a vise. The witness stated no one actually saw the claimant push the door, but the witness who testified that when he heard the noise, he witnessed the claimant charging in after the door was pushed open by him. The witness also testified that when he was a foreman, on or about April 18, 1974, the claimant was given a reprimand for throwing a 2x4 through the window. The claimant states this was accidental as he meant to throw it in the wood pile as another employee threw it at him. The claimant was terminated on December 30, 1974 by the foreman, and the reason given him was 'abuse of company property.' The Referee notes this was identical to the notice given to the claimant (Ex. #11) on April 18, 1974."

In support of his decision, the referee cited *Miller v F W Woolworth Co*,[3] and concluded that plaintiff could be disqualified from receiving unemployment compensation benefits under the misconduct provision of the act[4] for a discharge which resulted from a "pattern of misconduct".

The standard for disqualifying misconduct is enunciated in *Carter v Employment Security Comm*[5] as:

---

[3] 359 Mich 342; 102 NW2d 728 (1960).
[4] MCL 421.29(1)(b); MSA 17.531(1)(b).
[5] 364 Mich 538, 541; 111 NW2d 817 (1961).

"limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer."

Applying this definition to this case, we find that the referee's decision was in conformance with both the law and the evidence.

Affirmed.

D. E. HOLBROOK, J., concurred.

M. F. CAVANAGH, P.J. *(dissenting)*. Plaintiff appeals from a determination by a referee for the Michigan Employment Security Commission (MESC) disqualifying him from unemployment benefits for a six-week period.[1] The referee found that the plaintiff had been discharged for "misconduct connected with his work" pursuant to MCL 421.29(1)(b); MSA 17.531(1)(b). This decision was affirmed by the MESC Appeal Board, with one member dissenting; the circuit court also upheld the referee's determination on the grounds that competent, material and substantial evidence existed in the record to support his findings.

The facts are essentially not in dispute. Plaintiff was discharged by his employer as the result of an incident in which he came through a metal cafeteria door with sufficient force to break two sets of

[1] This disqualification period was based on the version of MCL 421.29(3); MSA 17.531(3) then in effect. Subsequently, the statute was amended, effective June 6, 1975, to provide a 13-week disqualification period for benefits where an employee is discharged for misconduct under MCL 421.29(1)(b); MSA 17.531(1)(b). See 1975 PA 110, § 1.

bolts connected to the door's closing mechanism, as well as damaging the door's hinges and frame. The reason given for the discharge was abuse of company property, in violation of company rules. At the hearing, testimony showed that the plaintiff was reprimanded for a similar incident in which he threw a board towards a wood pile without looking. By misdirection, the board broke a window. The referee found that these two incidents, which taken individually may not have constituted misconduct, established a pattern of misconduct under *Miller v F W Woolworth Co,* 359 Mich 342, 354; 102 NW2d 728 (1960), sufficient for disqualification under MCL 421.29(1)(b); MSA 17.531(1)(b).

The first issue raised by the plaintiff concerns the proper standard for review of administrative decisions. This standard is well established. The reviewing court has the power to consider questions of law and fact, but may reverse an order of the MESC referee or appeal board only if the decision is contrary to law or is unsupported by competent, material evidence on the whole record. Const 1963, art 6, § 28; MCL 421.38; MSA 17.540. Where no dispute exists as to the underlying facts, the question presented is the proper application or interpretation of the law. *Thomas v Employment Security Comm,* 356 Mich 665; 97 NW2d 784 (1959), *Baker v General Motors Corp,* 74 Mich App 237, 244-245, fn 2; 254 NW2d 45 (1977). The scope of this review clearly includes the soundness of the MESC's interpretation of misconduct. *Wickey v Employment Security Comm,* 369 Mich 487, 492; 120 NW2d 181 (1963). The trial court therefore erred in failing to review the issue of misconduct.

Plaintiff, in addition to disputing the MESC finding of a pattern of misconduct sufficient to disqualify him for unemployment benefits under

*Miller v F W Woolworth Co, supra,* also asserts that the single incident involving the door did not constitute misconduct.

It is clear, first of all, that while this incident may have justified the plaintiff's discharge for a breach of company rules, not every such breach rises to the level of misconduct sufficient to disqualify the employee for unemployment benefits. *Reed v Employment Security Comm,* 364 Mich 395; 110 NW2d 907 (1961).

To justify the finding of misconduct in the instant case, the plaintiff's conduct must fall within the definition set out in *Carter v Employment Security Comm,* 364 Mich 538, 541; 111 NW2d 817 (1961):

"The term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

Although the plaintiff's force in opening the door was under the circumstances negligent and unsatisfactory conduct, I cannot conclude that it was misconduct within the meaning of the statute. His act was not a breach of duty endangering human life and property, *Bell v Employment Secu-*

*rity Comm,* 359 Mich 649; 103 NW2d 584 (1960)
(misconduct found where a boiler tender, charged
with responsibility for a potentially dangerous
piece of machinery, fell asleep on the job). Nor was
his conduct "fundamentally disruptive of orderly
conduct of work and of an employer's right to
direct" it as was the employee's disobedience of a
foreman's direct order and threat of violence in
*Carter, supra,* 542. In fact, the referee implicitly
found that the incident involving the door, stand-
ing alone, was insufficient to establish misconduct.
Rather, he felt it necessary to rely on plaintiff's
prior conduct in order to justify his conclusions. In
my view, the incident of the two-by-four provided
even less justification for the referee's decision
than did the acts that finally caused plaintiff's
discharge. I therefore conclude that this single
incident is insufficient to meet the standards of
misconduct in *Carter, supra.* In so concluding, I
am mindful of the remedial purpose of the unem-
ployment compensation act. To effectuate this pur-
pose, its provisions must be liberally construed; we
thus must view with caution any narrowing of the
act that would deprive persons entitled thereunder
of benefits. *Godsol v Unemployment Compensation
Comm,* 302 Mich 652, 665; 5 NW2d 519 (1942),
*Fifth District Republican Committee v Employ-
ment Security Comm,* 19 Mich App 449, 452; 172
NW2d 825 (1969), *lv den* 383 Mich 760 (1970).

I next examine the referee's conclusion that the
two instances in which the plaintiff damaged com-
pany property constituted a series of acts estab-
lishing a pattern of misconduct. These two epi-
sodes occurred eight months apart; the earlier of
the two had resulted in a three-day disciplinary
lay-off.

The fact that these two instances were distant in
time from each other does not prevent a finding of

a "pattern of misconduct". *Giddens v Employment Security Comm,* 4 Mich App 526, 535; 145 NW2d 294 (1966), *lv den* 378 Mich 744 (1966). *Giddens,* however, defines this pattern as a type of "last straw doctrine":

"Indeed, if we were to sum up the latitude to be permitted an employer in dealing with a recalcitrant employee who has consistently demonstrated disregard for the employer's interests, we might call it a 'last straw' doctrine in which the final infraction, * * * is of such a nature that it demonstrates conclusively the employee's utter disregard for the employer's interests."

Other cases finding a pattern of misconduct adopted a total picture approach to focus on the consistency, duration and gravity of the conduct to determine if the employee's behavior evinced "a wilful disregard of [the] employer's interests". *Booker v Employment Security Comm,* 369 Mich 547, 551; 120 NW2d 169 (1963).[2]

I agree with the plaintiff, therefore, that the referee erred in finding that the two instances complained of constituted a pattern of misconduct sufficient to disqualify the plaintiff for benefits under MCL 421.29(1)(b); MSA 17.531(1)(b). The total picture presented reveals that the plaintiff's behavior, while negligent, was not so continuous and egregious that it evidenced his utter disregard for his employer's interests. *Giddens v Employment Security Comm, supra.* For the foregoing reasons, I would reverse.

---

[2] The pattern of misconduct in *Booker, supra,* was based on the employee's long history of absenteeism, tardiness and intoxication. For other examples of this type of misconduct, see *Miller v F W Woolworth Co, supra,* (misconduct found in employee's consistent ill-temper, rudeness to customers and insubordination, despite repeated warnings) and *Giddens v Employment Security Comm, supra,* (employee's record revealed numerous disciplinary lay-offs and a last-chance warning prior to the final episode of absenteeism that caused his discharge).