BROYLES v AEROQUIP CORPORATION

Docket No. 107130. Submitted November 2, 1988, at Lansing. Decided March 21, 1989.

Thomas Broyles was discharged from his employment with Aeroquip Corporation after an incident with his supervisor during which Broyles called the supervisor an "asshole" and "prick." Broyles filed for unemployment compensation benefits, which were initially denied on the basis that Broyles' use of abusive and insulting language towards his supervisor constituted wanton and wilful disregard of the employer's interest. Following a hearing, a hearing referee awarded unemployment benefits to Broyles, finding that Broyles did not commit wilful and wanton misconduct under § 29 of the Michigan Employment Security Act. The Michigan Employment Security Commission Board of Review reversed the referee's decision and denied benefits. The Jackson Circuit Court, James G. Fleming, J., affirmed the decision of the Board of Review. Broyles appealed.

The Court of Appeals *held:*

The use of vulgar or abusive language can constitute employee misconduct. Such conduct is wilful and deliberate and violates the standards of behavior that an employer can reasonably expect from its employees. Every use of a vulgar epithet does not necessarily constitute misconduct, however. Rather, the totality of the circumstances of the case must be considered in determining if the use of vulgar or abusive language constitutes misconduct. Broyles' use of vulgar language directed at his supervisor in a hostile confrontation is sufficiently supported by the record to allow the MESC to determine that Broyles engaged in misconduct. This is an appropriate case to defer to the judgment of the MESC. The circuit court's affirmance of the decision of the MESC Board of Review denying benefits to Broyles is affirmed.

Affirmed.

REFERENCES

Am Jur 2d, Labor and Labor Relations § 960.

Use of vulgar or profane language as bar to claim for unemployment compensation. 92 ALR3d 106.

Unemployment Compensation — Employee Misconduct — Vulgar
    or Abusive Language.

    The use of vulgar or abusive language can constitute employee
    misconduct for purposes of § 29 of the Michigan Employment
    Security Act and violates the standards of behavior that an
    employer can reasonably expect from its employees; however,
    every use of a vulgar epithet does not necessarily constitute
    misconduct, rather, the totality of the circumstances of the case
    must be considered in determining if the use of vulgar or
    abusive language constitutes misconduct (MCL 421.29[1][b];
    MSA 17.531[1][b]).

*George J. Brannick* and *James E. Dudus,* for claimant.

*Dykema, Gossett* (by *Richard N. LaFlamme* and *Anne E. Campau*), for Aeroquip Corporation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Mark F. Davidson,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: Sawyer, P.J., and Beasley and A. L. Gilbert,* JJ.

Per Curiam. Plaintiff appeals from a decision of the circuit court which affirmed defendant MESC's Board of Review reversal of an MESC referee's decision awarding plaintiff unemployment compensation benefits. We affirm.

Plaintiff was discharged from his employment with defendant Aeroquip Corporation after an incident with his supervisor in which plaintiff became verbally abusive towards the supervisor, calling him "asshole" and "prick." Plaintiff filed for unemployment compensation benefits, which were initially denied on the basis that plaintiff's use of abusive and insulting language towards the super-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

visor constituted wanton and wilful disregard of
the employer's interest. The hearing referee con-
cluded that claimant did not commit wilful and
wanton misconduct under § 29 of the MESC act,[1]
and, therefore, awarded unemployment benefits to
plaintiff. The MESC Board of Review reversed the
referee's decision and denied benefits. The Board
of Review's decision was affirmed by the circuit
court and plaintiff now appeals to this Court.

We begin by noting the standard of review to be
applied in this case. This Court, in *Washington v
Amway Grand Plaza,* 135 Mich App 652, 656-657;
354 NW2d 299 (1984), reiterated the standard of
review:

> The applicable standard of review was stated in
> *Chrysler Corp v Sellers,* 105 Mich App 715, 720;
> 307 NW2d 708 (1981):
> "On appeal from decisions of the Board of Re-
> view, we may review questions of law or fact,
> Const 1963, art 6, § 28, MCL 421.38; MSA 17.540,
> but we can reverse only if the order or decision is
> contrary to law or is unsupported by competent,
> material and substantial evidence on the record. If
> there is no dispute as to underlying facts, ques-
> tions presented on appeal are to be treated as
> matters of law. *Laya v Cebar Construction Co,* 101
> Mich App 26, 29; 300 NW2d 439 (1980)."
> The scope of appellate review clearly includes the
> soundness of the board of review's interpretation
> of misconduct. See *Helzer v Metzgar Conveyor Co,*
> 89 Mich App 695, 700; 282 NW2d 187 (1979),
> dissenting opinion of Judge (now Justice) CAV-
> ANAGH.

The definition for "misconduct" was also stated by
the Court in *Washington, supra* at 657:

> In *Carter v Employment Security Comm,* 364

---

[1] MCL 421.29(1)(b); MSA 17.531(1)(b).

Mich 538, 541; 111 NW2d 817 (1961), the Court adopted the classic definition of misconduct, quoting *Boynton Cab Co v Neubeck,* 237 Wis 249, 259-260; 296 NW 636 (1941):

" 'The term "misconduct" . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' "

Turning to the issue at hand, whether the use of vulgar or abusive language towards a supervisor constitutes misconduct, there appears to be no cases directly on point in Michigan. The issue has been considered in our sister states, however, which have, by and large, upheld the denial of unemployment compensation benefits based upon the claimant's use of vulgar and abusive language, concluding that such actions constituted misconduct. See *Zeches v Iowa Dep't of Job Service,* 333 NW2d 735 (Iowa App, 1983); *Chapman v Office of Employment Security, Baton Rouge,* 413 So 2d 581 (La App, 1982); *Acord v Labor & Industrial Relations Comm,* 607 SW2d 174 (Mo App, 1980). But see *Christianson v Geo A Hormel & Co,* 404 NW2d 334 (Minn App, 1987).

In looking at the use of vulgar or abusive language, we conclude that the use of such language

can constitute employee misconduct. Certainly such conduct is wilful and deliberate since the employee can choose which words to use and, we believe, it violates the standards of behavior that an employer can reasonably expect from his employees. That is, we believe an employer has the right to expect his employees to act with a certain amount of civility towards management personnel and, for that matter, fellow employees. Of course, every use of a vulgar epithet does not necessarily constitute misconduct. Rather, the totality of the circumstances of the case must be considered in determining if the use of vulgar or abusive language constitutes misconduct. Thus, we must look to the words used and the context in which the words are spoken in determining whether an employee has engaged in misconduct. In looking at the totality of the circumstances, various considerations should be taken into account. Whether the use of vulgar or abusive language constitutes misconduct depends upon a variety of factors, including considerations such as whether the words were directed at a fellow employee, a supervisor, or a customer, whether the tone and context suggests an abusive intent or friendly badgering, whether the comments were made in a private conversation or in the presence of others, and whether such conduct has been condoned in the past.

Turning to the case at bar, while we are not prepared to say that plaintiff's conduct as a matter of law constitutes misconduct, neither are we prepared to say that his conduct does not as a matter of law constitute misconduct. Rather, we believe that plaintiff's use of vulgar language directed at his supervisor in a hostile confrontation is sufficiently supported by the record to allow the MESC to determine that plaintiff engaged in misconduct. That is, while we are not convinced that the MESC

would have erred by ruling in plaintiff's favor, neither are we convinced that the MESC erred in ruling against plaintiff. Given the standard of review employed in unemployment compensation cases, we believe that this is the appropriate case to defer to the judgment of the MESC. Accordingly, we affirm the circuit court's affirmance of the decision of the MESC Board of Review denying benefits to plaintiff.

Affirmed. Defendants may tax costs.